### ⟨ Arrison *against* The Commonwealth.

A bond given by executors, conditioned for the faithful discharge of their duties, in pursuance of an order of the orphan's court, was sued by one legatee in the name of the Commonwealth for his own use, and a judgment was obtained by award of arbitrators for the amount of the penalty with the right to take out execution for the amount of his damages; these damages were paid by the defendant, and the legatee entered satisfaction on the judgment. Held, that such satisfaction extended only to the interest of that legatee, and a *scire facias* may be issued upon the judgment to enable any other of the legatees to recover their legacy; and a legatee whose legacy did not become due until after the date of the judgment may also maintain a *scire facias* upon it.

Such a judgment is final and not interlocutory, and is a lien upon all the lands of the defendant in the county where it is rendered; but its lien is limited to five years by force of the act of 1798.

Another legatee having sued the same bond and obtained judgment for the penalty with the right to take out execution for the amount of his legacy: it was held that although the first suit, if it had been pleaded, would have been a bar to the second; yet the circumstance, of its having been paid, and satisfaction entered upon the record, did not in any way affect the judgment in the first suit, or the right of any legatee or party in interest to maintain a *scire facias* upon it.

After the lapse of five years from the rendition of the original judgment, lands which were originally bound by its lien are discharged.

A *scire facias* which does not properly recite the original judgment, will not continue its lien, although after the five years have elapsed the court permit the *scire facias* to be amended so as to recite it properly.

THE facts of this case were stated and considered in the nature of a special verdict, all of which are fully recited in the opinion of the court.

*Porter*, for plaintiff in error.
*Hepburn*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—This case has been brought before us by a writ of error to the judges of the court of common pleas of Northampton county: where *The Commonwealth* for the use of *Rebecca Rhea* was plaintiff; and *Thomas M'Cracken* and *Dilman Kulb*, the plaintiffs in error, with *John Fulmer* and *John Hartzell*, were defendants. The three latter were warned, as terre tenants of some of the lands upon which it was claimed, that the judgment upon which the *scire facias* was sued out was a lien. The material facts, as set forth in a case stated by the parties in the nature of a special verdict, were: that two suits had been brought in the court of common pleas of Northampton county in the name of the Commonwealth to August term 1817, against *Jephthah Arrison*, *Thomas M'Cracken* and *John Nelson*; one, No. 112, for the use of *Samuel Rhea M'Kibbin* and *Ann M'Kibbin*, by their guardian *William M'Kibbin*, and the second, No. 113,

[Arrison v. The Commonwealth.]

for the use of *George Jones Rhea,* by his guardian *William Rhea.* Both suits were commenced upon the same bond, which had been given by *Jephthah Arrison,* one of the executors of the last will and testament of *Samuel Rhea* deceased, with *Thomas M'Cracken* and *John Nelson* as his sureties; conditioned for *Jephthah Arrison* and his co-executor *James Davison* " well and truly administering all the goods, chattels, rights and credits which were of the deceased at the time of his death, and which had or at any time afterwards should come to their hands, or that of any other for their use, according to the directions of the testament and last will of the deceased, &c."

The amount or penalty of the bond was 12,000 dollars, and given on the 28th of May 1817, in pursuance of a previous decree of the orphan's court of Northampton county, made upon the complaint of some of the legatees named in the will, that the executors were wasting and carrying off out of the state, from which they had removed themselves, the estate of the testator. These suits were instituted upon the bond by *William M'Kibbin* and *William Rhea,* for the use of their respective wards, to recover legacies coming to them under the will. On the 12th of November 1817, judgment by agreement of the parties was entered in each suit for " the penalty of the bond, with leave to take out execution after the 18th day of May then next following, for the sum of 788 dollars and 92 cents, the principal and interest due, together with the interest accruing and costs of suit." On the 3d of May 1820, *William M'Kibbin,* the guardian named in the first judgment, by his attorney in fact, *William Rhea,* entered on the record thereof, that he, as the " guardian of the plaintiff, had received full satisfaction of that judgment, as it respected their claim on the judgment in the above case."

Upon the 5th of June 1822, a *scire facias* was sued out, returnable to August term 1822, No. 37, said to be upon the judgment in the action No. 112 of August term 1817; but this writ of *scire facias* recited a judgment which never existed, and one altogether different from that which was entered in the suit No. 112 of August term 1817. The recital is, " whereas, the Commonwealth of Pennsylvania for the use of *Rebecca Rhea,* heretofore in our court of common pleas of the county of Northampton, to wit on the term of August 1817, before *Robert Porter,* esquire, and his associates, then our judges at Easton, by the consideration of the same court, recovered against *Jephthah Arrison, Thomas M'Cracken* and *John Nelson,* late of the said county, yeomen, as well a certain debt of 788 dollars and 92 cents, lawful money of Pennsylvania, which to the said Commonwealth, *for the use aforesaid,* in our said court were adjudged for her damages which she sustained by occasion of the detention of that debt; whereof the said *Jephthah Arrison, Thomas M'Cracken* and *John Nelson* are convict; as by the record and proceedings thereupon in our said court, before our judges at Easton, remaining, more fully appears." And then, after further reciting that five years had nearly expired since the said judgment was obtained, and that the lien on

[Arrison v. The Commonwealth.]

said real estate of the defendants would be lost unless revived, it proceeds to direct the sheriff to warn the defendants in the usual form. To this writ the sheriff returned, that he had served it upon *M'Cracken* and *Nelson*, two of the defendants, and given notice to *Henry Smith*, terre tenant. Afterwards, on the 31st of August 1822, a judgment by default was entered for want of appearance. Upon this judgment, on the 26th of October following, a writ of *fieri facias* was sued out, and indorsed as follows. " Real debt due 1st April 1821, 170 dollars and 14 cents. Interest from 1st of April 1821 to 31st of August 1822, 14 dollars and 46 cents. Amount due 1st April 1822, 105 dollars and 10 cents. Interest from 1st of April 1822 to 31st August 1822, 2 dollars and 62 cents. In all, 292 dollars and 33 cents." A tract or lot of land, the property of *Jephthah Arrison*, was levied on under this writ, and afterwards sold, upon a writ of *venditioni exponas*, for 136 dollars. And again, on the 5th of April 1824, an *alias fieri facias* was sued out to April term 1824, for the residue; and by indorsement thereon, the sheriff was " directed to levy on the lands of the defendant, *John Nelson*, then in the hands and possession of *T. T. Culp*." The lands of *Nelson* were levied on, and the rents, issues and profits of them, beyond reprizes, were found by the inquest sufficient to pay the amount of the execution in seven years. Anterior to this, at April term 1823, in the court below, an amicable action, in the nature of a writ of *scire facias*, to ascertain the amount due to *John Rhea*, another legatee under the will, upon the judgment in the action of August term 1817, No. 112, was entered, but nothing more done in it.

After these proceedings were had, *Rebecca Rhea*, the widow of the testator, who claimed a certain annuity under the will, commenced this suit, in which the judgment is now brought up for review, by suing out a writ of *scire facias* for her use, to August term 1826, upon the judgment rendered for 12,000 dollars, in the suit No. 112, already stated, to August term 1817. In this writ, after reciting the judgment as it appears on the record, and the bond and condition thereof upon which it was given, and so much of the will of the testator as to show the annuity which was thereby directed to be paid to her by the executors out of the estate of the testator in their hands; the arrearages of the annuity accruing from the 1st of April 1822 to the 28th of November 1825, amounting in the whole to 397 dollars and 87 cents, are set forth ; and the nonpayment of the same assigned as a breach. To this writ, which was put into the hands of the sheriff, he returned, that he had " made known to *Thomas M'Cracken*, one of the defendants, and to *Dilman Culp*, *John Fulmer* and *John Hartzell*, terre tenants ; and *nihil* as to *Arrison* and *Nelson*." The land of which *Hartzell* was in possession, amounted to forty-one acres and sixty perches ; and he claimed to be tenant of it in fee simple, by purchase from *Thomas M'Cracken*, one of the defendants, for the price of 1950 dollars ; and by deed of

[Arrison v. The Commonwealth.]

conveyance founded upon this purchase, duly executed by *M'Cracken* and his wife to him, on the 26th of June 1819.

*Fulmer* was in possession of twenty-four acres and one hundred and forty perches, and held by a purchase of the same from *Margaret M'Cracken*, for the consideration of 600 dollars paid to her, who, by her deed dated 12th of May 1823, sold and conveyed the same to him, under a title derived from *Thomas M'Cracken* and his wife, who, on the 16th of June 1819, by their deed, for the consideration of 1200 dollars paid to them by her, sold and conveyed the same twenty-four acres and one hundred and forty perches to her in fee.

*Dilman Culp* or *Kulb* is in the possession of one hundred and forty-six acres and thirteen perches; and has become the tenant thereof in fee simple by purchase from *John Nelson*, one of the defendants in the original judgment, for the price of 1533 dollars and 75 cents, and holds the same by a deed of conveyance duly executed by *Nelson* and his wife, on the 10th day of April 1823. 500 dollars of the 1533 dollars and 75 cents, the consideration money inserted in the deed of conveyance, although acknowledged by the deed to have been paid, still remains unpaid by *Kulb* to *Nelson*. After the commencement of this suit, and while it was pending in the court below, a rule of the same was entered on the 1st of September 1827, to show cause why the writ of *scire facias* sued out, returnable to August term 1822, No. 37, should not be amended by the *præcipe* and record, so as to recite the sum for which the original judgment was entered; and on the 　　 day of November following, this rule was made absolute, and an amended writ of *scire facias* filed.

From these facts, the court below gave judgment in favour of *Fulmer* and *Hartzell*, two of the terre tenants; but against *M'Cracken* and the other tenant *Dilman Kulb*, who have sued out the writ of error in this case.

Four errors have been assigned, but three questions only are presented by them.

1st. Did the original judgment, entered in the suit No. 112, of August term 1817, for the penalty of 12,000 dollars, create a lien to that amount upon the real estate of the defendants lying within the county? And if it did, 2d. Has any act been done to extinguish it; or has it expired by force of the act of 1799, limiting the lien of judgments? And 3d. Had *Rebecca Rhea* a right to sue out the writ of *scire facias* in this case upon that judgment of 12,000 dollars arrearages of her annuity, which did not accrue and become payable until long after the judgment had been obtained?

As to the first question, this court is of opinion that the judgment entered for the penalty of the bond became a lien from its date, to the full extent of the penalty, or 12,000 dollars, upon the whole of the real estate of the defendants, which they then owned, lying within the county of Northampton.

Whether judgment entered for the penalty of a bond in such case

2 x

be a lien or not upon the real estate of the defendant, depends upon the character of the judgment, whether it be an *interlocutory* or a *final* judgment. If it be merely interlocutory, it is no lien ; but if final, it is so upon all the lands of the defendant lying within the county at the time of entering it. See *Lewis* v. *Smith*, 2 *Serg. & Rawle* 161, opinion of Justice *Yeates.*

A bond, such as the one upon which this judgment of 12,000 dollars was entered, conditioned for the performance of several acts and things at different times, becomes forfeited as soon as the obligor fails or neglects to do the first act that is required by the condition of the bond to be performed ; and the obligor is entitled, according to the principles of the common law, not only to sue upon the bond, but to recover a judgment and have execution for the whole amount of the penalty, if not paid. *Gainsford* v. *Griffith,* 1 *Saund.* 58, *note* (1).

After some time courts of equity interposed, and granted relief from the payment of the penalty: in some cases where it was large and the real injury trifling; and in all cases where the object of the penalty was to secure the payment of a less sum of money, which, if paid afterwards with interest, was considered in equity an adequate compensation for the injury which arose from the nonpayment of it according to the condition of the bond. See 1 *Fonb. Eq.* 151, *note* (a) ; 1 *Fonb. Eq.* 395 to 397 ; 1 *Saund.* 58, *note* (1). And before the statute of 8 and 9 *Will.* 30, *cap.* 2, came into operation, it was not competent for the plaintiff to assign, in an action of debt upon a bond with a condition for the performance of covenants or other collateral acts, more than one breach; for if he had, it would have been bad for duplicity ; and, again, because the bond was forfeited as much by the breach of one covenant, or failure to perform one act, as of all the covenants or acts required to be done. 1 *Saund.* 58, *note* (1) ; *Manser's Case*, 2 *Co.* 4, where Sir *Edward Coke* cites, 21 *Ed.* 4, 6, *a, b,* for the first branch of this proposition. The judgment, then, which was given for the plaintiff, upon the bond for the penalty, was final and complete, whereby not only his right to recover, which is all that an interlocutory judgment established, but the amount, is fixed and ascertained, which gives to it the character of a final judgment, and makes it binding, to the full amount for which it is entered, upon the real estate of the defendant. Thus stood the case of a bond conditioned for the performance of covenants or of collateral acts, until the passage of 8 and 9 *Will.* 3, *cap.* 2, which has been adopted in this state, but has in no wise changed the nature or character of the judgment that is to be entered, which must still be for the amount of the penalty, the same as before the passage of the statute. By the eighth section of it, the judgment, which is entered for the whole penalty, is only to stand as a security for the damages actually sustained, which are to be assessed by the jury that shall try the cause; or in case of a judgment had upon demurrer or by default, it is also to be entered for the whole amount of the penalty, but to remain as a security for the damages actually sustained, which the plaintiff,

[Arrison v. The Commonwealth.]

by suggesting the breaches upon the record, is entitled to have assigned under a writ of inquiry, the form of which is given in *Lilly's Entries* 608, 609. After this proceeding is had, if the damages and costs are not paid, the plaintiff may sue out an execution, which must be to levy the debt, that is, the penalty and costs recovered by the judgment; but on the execution there ought to be an indorsement to levy only the damages assessed for the breaches assigned. 1 *Saund.* 58, *note* (1). And *Sergeant Williams* further says in this note, which seems to put an end to all question on this point, that " the statute does not direct any *judgment to be entered for the damages assessed,* and for the costs upon the return of the inquisition by the judge; therefore it should seem there can only be *one judgment,* namely, the *old judgment for the debt* (that is, the penalty) and one shilling damages for the detention, and 40 shillings costs, together with the costs of increase." From this it appears that the only judgment which is entered in a suit upon such a bond, as well since the passage of the statute of 8 and 9 *Will.* 3, as before, is one for the whole penalty, nominal damages and the costs; and that no other is to be entered at any stage of the proceeding; and that for the amount of this judgment, which is for the penalty, the execution must be sued out in all cases, if taken out at all.

In addition to this, the statute expressly declares, that, notwithstanding the damages, costs and charges shall be fully paid, yet " in each case the *judgment shall remain as a further security,* to answer to the plaintiff such damages *as he may sustain by any other breach of covenant* contained in the same indenture, deed or writing; upon which the plaintiff may have a *scire facias* upon the said judgment against the defendant, his heirs, terre tenants, executors or administrators, suggesting other breaches of the said covenants or agreements, and to summon him or them respectively to show cause why execution should not be awarded upon the *said judgment.*" Now, unless the judgment that is entered for the penalty be held to bind the real estate of the defendant, this clause of the statute, which directs that it shall remain as a further security, would be eluded, and rendered inoperative; for it is only by its becoming a lien upon his real estate that it can afford any real substantial security.

As to the second question, it has been contended, that the original judgment of 12,000 dollars was extinguished on the 3d day of May 1820, by the satisfaction which was then entered by the guardian of those who caused the suit to be instituted; but that was merely an entry of satisfaction for the damages which had been assigned, by the convention of the guardian and the defendants, as the amount or sum of money that was coming to his wards, and not a satisfaction of the judgment for the penalty. The party who entered that satisfaction, had no power to enter a satisfaction that would have extinguished the judgment for the penalty. So far only as he, or his wards for whom he was acting, had an interest in and a right to an execution upon it, to compel payment of the damages to which they were

[Arrison v. The Commonwealth.]

entitled, he could satisfy it, but no further. The Commonwealth is the plaintiff in the judgment for the penalty, and a trustee for all concerned and interested in it ; and no *cestui que use* can enter satisfaction that will extend beyond his own interest, although he may have commenced the suit and prosecuted it to a judgment for the penalty. Neither did the second judgment entered in the second suit, No. 113 of August term 1817, upon the same bond, for the same penalty, affect the judgment in No. 112 in any way whatever, nor prevent the proceeding upon it which is now under consideration, as has been suggested. But the first suit and judgment might have been pleaded against the maintenance of the second, which was altogether irregular ; for only one judgment can be had on such a bond. The bond becomes merged in the first judgment, and no suit can be sustained upon it afterwards, except it be by statute, as in the cases of sheriff's and constable's office bonds with us, where it is directed otherwise. But it is the opinion of this court, that the lien created by the entry of the judgment for the penalty of the bond, in the suit No. 112, expired at the expiration of five years from the first day of the term of which it was entered, inasmuch as it was not revived and kept alive by issuing a *scire facias* within that time upon it, according to the directions of the act of assembly of 1798, limiting the liens of judgments.

The *scire facias* which was issued to August term 1822, No. 37, did not recite this judgment at all, and can not, therefore, be considered as coming within the provisions of the act. *Dilman Kulb* became a purchaser of the land in his possession, and received a deed of conveyance for it on the 10th of April 1823, when the five years had run and the judgment of 12,000 dollars had ceased to be a lien on it. The attempt that was made to amend the *scire facias* of 1822, can not avail. It shows, however, that in the opinion of the counsel who moved for it, as well as that of the court that granted it, that the writ was radically defective, and that the judgment entered on it was insufficient to preserve and continue the lien, without an amendment, which changed by far the most important feature of it. The rule asked for, was to amend the writ so as to make it accord with the *præcipe* that was given for the issuing of it, and the record of the judgment. Now it does not appear that the *scire facias* was variant in any particular from the *præcipe*. It was, therefore, not authorized by it. Beside this, it must be apparent to every intelligent mind, upon mature reflection, that it was out of all time to make such an amendment for the purpose of resuscitating a lien which was clearly dead. More than ten years had elapsed from the date of the original judgment, at the time when the amendment was applied for ; and more than five years had run around from the date of the judgment entered in the *scire facias* which was amended. The lien of every judgment is limited by the act of assembly already mentioned to five years, unless revived by *scire facias* as therein directed. Now whether the lien of a judgment be kept alive and still in force, is a

question that can only be determined by an inspection of the record, and if that does not show it to be so, it is dead and gone. Then what would have been the answer of any mind familiar with such a subject, if this question had been put at the time the rule to amend was entered? It is scarcely possible to doubt but that the answer would have been, that the lien had expired, as more than five years had run after the date of the judgment, or the first day of the term of which it was entered, and no *scire facias* appearing upon the record to have been issued upon it to revive it. The application to amend the *scire facias* which was issued, proves that no such *scire facias* as was requisite for this purpose appeared of record, otherwise the application was unnecessary; but the very object of the amendment was to put such a *scire facias* upon record, because it did not appear there before. The lien then of this judgment of 12,000 dollars, which was entered on the 12th of November 1817, having been permitted to expire by the lapse of five years without issuing a *scire facias* upon it for the purpose of recovering it, *Dilman Kulb* stood a purchaser of his land in fee simple, discharged from the lien of this judgment; and the court below were therefore wrong in awarding execution of the judgment against the land which he had purchased of *John Nelson* one of the defendants. It is also equally clear that no execution upon this judgment could be awarded against *Kulb* on account of the 500 dollars, part of the purchase money which he still owed *Nelson* for the land, because these five hundred dollars were a debt merely, or *chose in action*, which *Nelson* had against *Kulb*, and do not appear to be even charged upon the land in any way; and can not be made the subject of execution.

As to any lien that may have existed under the judgment in the *scire facias* of August term 1822, No. 37, at the time *Kulb* purchased it, if any was created by it, it has been suffered to expire, five years having passed by without any attempt to revive it. Hence, it does not appear that there is any colour for charging *Rebecca Rhea's* claim upon the land of which *Kulb* is tenant in any way whatever.

With respect to the third question, we have seen already in that part of the statute of 8 and 9 *Will.* 3, *ch.* 2, which has been recited, that provision is expressly made for the assignment and recovery of damages which shall arise from breaches happening after the entry of the original judgment. That as often as such breaches shall take place, the plaintiff is thereby authorized and enabled to sue out a *scire facias* upon the judgment, suggesting the new breaches; and the damages for and on account thereof, are to be assessed in like manner as for the first in the original proceeding—in which no other judgment is necessary to be rendered than the usual one in a *scire facias*, of an *award of execution*. This, it may here be observed, shows also the *final* and definitive character of the judgment that is given in the first instance for the penalty of the bond.

In the note of Sergeant *Williams* so often referred to, 1 *Saund.* 58, *note* (1), all this is most explicitly declared and set forth; and like-

[Arrison v. The Commonwealth.]

wise in *Tidd's Pract.* 1012, 1013. The commonwealth is and must be considered as the plaintiff in the court below, in all the proceedings that have been had upon the bond and judgment now under consideration, which brings the case completely within the provisions of the statute of 8 and 9 *Will.* 3, and makes the proceeding against *Thomas M'Cracken* perfectly regular and sustainable, to recover damages for breaches committed after the entry of the judgment for the penalty of the bond.

The judgment of the court below awarding execution against the land in the possession of *Dilman Kulb* is reversed, but the judgment against *Thomas M'Cracken* is affirmed.