# Brotherline *against* Mallory.

On a *scire facias* against bail, to enable the defendant to take advantage of the fact that no *capias ad satisfaciendum* issued against the defendant in the original suit it must be pleaded; but if evidence be given of it without plea and without objection, and the court err in their opinion upon the effect of that evidence, the judgment will be reversed.

If in such case a *capias ad satisfaciendum* issued for an amount different from the actual amount of the judgment, or from the amount as afterwards fixed by the Prothonotary, and the fact be pleaded, the plaintiff will not be permitted to recover.

ERROR to the common pleas of *Huntingdon* county.

Mallory & Stone against John Brotherline. *Scire facias* against the defendant on bail of Hamilton Semple.

Mallory & Stone brought a suit against Hamilton Semple, in which a statement with two counts was filed; one on a book account for 211 dollars 85 cents; the other on a special promise contained in a letter of defendant, admitting 170 dollars to be due. That suit was commenced by a *capias ad respondendum*, and

[Brotherline v. Mallory.]

John Brotherline and Francis Semple became special bail for the defendant in the sum of 300 dollars.

At the April term, 1836, the cause was on the trial list, and being reached and a trial ordered on, the defendant's counsel gave judgment as per statement filed.

The plaintiff's counsel gave a *præcipe* for a *fieri facias* on this judgment to August term 1836, and the writ issued for 462 dollars 55 cents, being the amount of both sums in the statement and interest thereon, and for the costs. This was returned "*nulla bona;*" a *capias ad satisfaciendum* issued at the same term for the same sum of 462 dollars 55 cents and costs. This was returned "*non est inventus.*" The matter rested as to legal proceedings until a *scire facias* against the special bail issued to the January term 1838. This recited a judgment of April term 1836, for 205 dollars 95 cents. The *scire facias* was served on Brotherline, and "*nihil*" as to Semple. Brotherline appeared and pleaded *nul tiel* record; and payment with leave, &c. On this latter plea, payments were shown which reduced the debt to 96 dollars. On the plea of *nul tiel* record, the court directed the jury that there was such a record, and verdict was rendered for the plaintiff for 96 dollars.

On this plea and issue of *nul tiel* record, the following facts appeared by the record, and the testimony of the clerk in the prothonotary's office: When the executions were ordered, the *præcipe* did not state any sum, but simply called for the several executions on the judgment. The clerk added the two sums mentioned in the statement together, which, with interest, amounted to 462 dollars 55 cents, and issued the executions for that sum; when about to issue the *scire facias* on the recognisance of special bail, he found it was taken in 300 dollars—a sum less, as he supposed, than the amount of the judgment—and he applied to the plaintiff's attorney, who, after examining the matter, directed the judgment to be corrected so as to be for 205 dollars 95 cents—being the amount of the sum admitted in the letter, viz: 170 dollars and interest from the date of the letter. The clerk said—"Mr. W. (the attorney) gave me a statement to alter and correct the docket entry of the amount of the judgment to 205 dollars 95 cents, and said that was the amount. I erased the sum of 462 dollars 55 cents, and inserted 205 dollars 95 cents. This on the judgment in the continuance docket—when Mr. W. (the plaintiff's attorney) gave me the statement of the real debt being 205 dollars 95 cents, he told me the docket ought to be corrected; and I did so. I altered the amount on the continuance docket, and in the execution docket. I made no change in the executions returned. I issued the *scire facias* on the corrected judgment."

This evidence was offered and received without objection.

The counsel for the defendant requested the court to instruct the jury—1. That if the testimony of the clerk is believed, there is no judgment for 205 dollars 95 cents.

VIII.—M*

[Brotherline v. Mallory.]

2. That there having been in the plaintiff's statement two distinct causes of action set out, which, together with their interest, amounted to 462 dollars 55 cents, and judgment having been rendered by the court as per statement, that the judgment was for that sum of 462 dollars 55 cents, and could not be altered or corrected in any other way but by an application to the court to correct it; and that any alteration otherwise than by the direction of the court, though by direction of plaintiff's attorney rendered the judgment void.

3. That when there is a recognizance of special bail in an action as in this case, if a judgment is rendered for 205 dollars 95 cents, that before the special bail can be held as fixed or liable, the plaintiff must show that a writ of *capias ad satisfaciendum* issued according to and in pursuance of such judgment, and have a return of *non est inventus* thereon; and that no writ of *capias ad satisfaciendum* having issued for a debt of 205 dollars 95 cents, the plaintiff cannot recover in this action, and that the *capias ad satisfaciendum* of August term of 1836, for 462 dollars 55 cents, is not sufficient to enable the plaintiff to recover.

To the first point the court answered that it was of opinion that there is a judgment for 205 dollars 95 cents; that where a judgment is confessed as per statement filed, " the prothonotary has a right to make up the amount, and if he makes a mistake to correct it; and it is at all times open to further correction by the court."

To the second point the court answered: " The court agree that the most correct mode is to have all errors and mistakes corrected and amended by the court; but we cannot agree to the position that the correction in this case, as made by the prothonotary, renders the judgment void. We do not think it was very regularly done; it was like a release of half the judgment. It was the duty of the attorney to have it corrected when he discovered the prothonotary had made up the judgment for too large a sum. It would have been better to have had it corrected on motion; yet being done by the prothonotary, by the direction of the plaintiff's attorney, we do not think it rendered the judgment void."

To the third point the court say—" This instruction we refuse to give; but instruct the jury that on the record and evidence in the suit, the *capias ad satisfaciendum*, No. 128 (for 462 dollars 55 cents) and the return of *non est inventus*, enable the plaintiff to recover on the recognizance of bail."

These answers of the court were assigned for error.

*Bell*, for plaintiff in error.
*Parsons*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—It is too common, when a man is sued in debt on book account, or *indebitatus assumpsit*, and the defendant has no

[Brotherline v. Mallory.]

defence, that he almost entirely neglects his suit, and neglects to instruct his attorney; and the attorney often pleads where there is no defence; and when the cause is reached, and the jury about to be sworn, he directs judgment to be entered to save his client the costs of a verdict.   In such case, or where judgment is entered for want of a plea, the attorney for plaintiff makes a calculation of the amount due and interest, or leaves it to the prothonotary to do so; and for this sum execution issues.   And where the amount is mere matter of calculation, this is the practice every where: if the action sound in damages, and no data for calculation, a writ of inquiry issues, and the sum is ascertained by an inquest.   The entry on the docket is simply the word " Judgment," in many cases.   In Coyle *v.* Reynolds, 7 *Serg. & Rawle* 328, this practice is said to be of too long standing, and too universal to be corrected, though it was regretted as a defect in our practice. I am not sure that there is much cause of regret. The attorney for the plaintiff draws up the formal judgment in England, and, unless objection is made, the court never sees it.   In the case cited, it is said that if an execution issue for an improper amount, or otherwise irregularly, as if against executors personally, the court will, on motion, correct it.   In general the narr, and plea, and verdict will show the meaning and form of what the judgment ought to be.

If an improper execution issue, or for an improper sum, the only regular way is to apply to the court; and it would be greatly improper to alter it, to the injury of the defendant, without the direction of the court.   Where the alteration is in favour of the defendant it will generally be acceptable to him; but still it is irregular and illegal, that any change should be made except by the court.   The cases of Lewis *v.* Smith, in 2 *Serg. & Rawle,* and Holden *v.* Bull, 1 *Penn. Rep.* 460, and many others, recognize this practice; and in the latter case, where a bond and warrant to confess judgment had been given, in a sum certain, conditioned to indemnify against a sentence, fine and costs, in the quarter sessions, and execution issued for the whole amount of the bond, on a writ of error this court affirmed the judgment, but set aside the execution as illegal, until the amount was in some regular way ascertained, and referred to authority to show that this could have been done by the court out of which the execution issued.

It is the opinion of this court, that if objected to, the evidence to show the alteration of the amount of the judgment ought not to have been received.   It has been decided in more than one case— see Hoffman *v.* Coster, 2 *Wharton* 468, where the broad doctrine is established, that a record must be taken in all cases to have always been in the situation in which it is found. *Ibid.* 470. " In a collateral proceeding, one court cannot undertake to institute an inquiry on parol evidence, whether the record of another court is or is not true—whether it has been duly kept by the officer—whether it has been altered, and if altered, whether that alteration was au-

[Brotherline v. Mallory.]

thorised- or unauthorised. Every court of record is the guardian and judge of its own records. It is clothed with full power to control and inquire into them, and to set them right if incorrect." And in 471 is cited Kennedy *v.* Warksmuth, 12 *Serg. & Rawle* 171, where the orphans' court had permitted an administrator to add his affirmation to an account of testator's debts, exhibited eight years before, Tilghman, C. J. says: " In considering the record before us, we now take it that the affirmation of Lewis was made previous to the order of sale, then it is all right, for the record cannot be contradicted." Admitting the correctness of these decisions, and the cases cited in them, I may be permitted to say, although I do not deny them, I cannot clearly comprehend them or the principle necessary to support them. When it is said the court has authority, if its records are wrong, to set them right, I cannot see how they can be said to have been always as they are after they were set right. By a very old statute of 1700, the person who criminally alters a record is liable to infamous punishment, and double the damages sustained, and by a much later law, to confinement in the penitentiary for seven years. But if " all records must be taken to have always been as they are now found," I cannot see how any person can be convicted of having altered one. It seems to me one thing to give full faith and credit to the judgment of a court, and another thing to say the record, as it now stands, is so plainly written on an erasure, that whoever looks at it must see it is so; and the erasure is so incomplete, or being only made by a cross over it, that every body must see what it was and what it is. There is on the docket of a court in one of the counties in this state, an entry of judgment on warrant of attorney for a sum exceeding 50,000 dollars. The narr on the bond is or was in the office, and the confession of judgment is written, dated, and signed by the attorney. The date on the docket is palpably written on an erasure; on the narr it is not so. The date on one is September, on the other December. The value of the judgment once depended on which was the correct date. I procured a copy, under seal, of the whole record, as well of narr and confession of judgment endorsed, as of the docket entry. I say the value once depended on the question which was the correct date. It is perhaps immaterial now, as the entry is about thirty years old, and no proceedings on it. The docket entry of a judgment is a record; could not this have been inquired into? This case, however, does not, as I understand it, require any decision on this matter. This proceeding was before the court on whose records this entry or these entries were made, and the inquiry arose in proceedings before that court, to carry into effect that judgment. The superintendence and correction of that judgment if entered wrong, or changed to what was wrong, belonged to that court by all our decisions, even if to no other.

The lawyer who directed this alteration was, however, clearly right in admitting all the evidence, and the clerk as clearly right in

[Brotherline v. Mallory.]

telling the whole facts; without this, neither would have been clear of some imputation. Though neither intended any thing else than to do an act of justice to the defendant, the only error was in not waiting until the next term, and having the amendment the act of the court, in which case the defendant, instead of complaining, would have thanked the plaintiff's attorney.

In Garrick *v.* Williams, 3 *Taunton* 540, we find what in England has been called a strong case. It, however, after censuring the officer, decides that finding a record now right, the court would not declare it void, though it had stood in a very defective form for four years; and we find by that case and King *v.* Hopper, 3 *Price,* that application ought to be made in chancery, when a record is wrong, for authority to make it right. This last case contains what I do not agree to, that though the record of a deed has erasures, and something written on them, or the date of recording is written on an erasure, it is conclusive, and cannot be proved to be a forgery. Every thing written on paper or parchment may be altered, and become a forgery; and I am yet to be convinced that the doctrine which protects and supports the forgery, is at all calculated to protect estates, or secure the utility of records.

Where, however, the clerk has amended the record so as to have made it precisely what the court would have made it, if application had been made to them, I entirely agree to the principle of 3 *Taunton;* the court will not say it is void. I would, however, caution members of the profession, not to alter any thing which has become of record, unless on motion in court, and on notice to the opposite party. It seems to have been assumed in the common pleas, that the plaintiff was bound to show a *ca. sa.,* issued and returned *non est inventus,* in order to enable him to recover on his *scire facias* against the bail. It will be found this is not so. It is not usual nor necessary to state in the *scire facias* that a *ca. sa.* has issued; of course it is not necessary to prove what need not be averred, and is not averred. If the bail wish to avail themselves of the fact that no *ca. sa.* has issued, they must plead it, and if none has issued, the plea will avail them.

No such plea was put in here; but in the way in which this cause was tried, the case must here be considered as if defendant had put in that plea. All the facts were given in evidence without regard to pleadings, and the court delivered an opinion on those facts and the law, as if proved on a proper plea. If parties will go to trial without any plea, this court has more than once decided that, if all the facts in the case are proved and a charge by the judge on the law arising from these facts, we will not reverse because the proof was given without a plea; if so, it would be strange if we should reverse where all the facts have been heard, because all the pleas were not put in. A party may waive all pleadings, or part of the proper pleadings; and if he does, and goes to trial exactly as if all proper pleas were on the record, he must not expect us to do what,

[Brotherline v. Mallory.]

by his conduct, he said he did not want done. Was there, then, a *capias ad satisfaciendum* on this judgment for 205 dollars 95 cents? we think not. Nothing in the body of the writ, or endorsed on it, showed that it issued on this judgment; but every thing showed that it did not issue on the judgment for 205 dollars 95 cents; and it is now said that the judgment is to be taken to have been always for that sum. In the Commonwealth *v.* Arrison, 1 *Watts* 374, this court decided that a *scire facias*, which did not recite the original judgment correctly as to amount, and referred to no number or time, did not revive that judgment; and if five years elapsed, its lien was gone as against a purchaser, though the court permitted it to be amended after the five years, so as to revive it against the defendant's lands for five years to come. On this last point, then, the judgment is reversed. We can not inquire whether the bail were watching for a *capias ad satisfaciendum* on this judgment; they had a right to watch for one. None on this judgment, or which could be supposed to be on it, did issue. The proof of this was received, and the opinion of the court on this proof was required; and that opinion was not, on the case put and the facts then in evidence, correct. No *capias ad satisfaciendum* on this judgment appears on the record, and if the want of one is not pleaded and all evidence on that subject is objected to, it must be rejected; and then plaintiff might recover without having issued and procured a return of such writ; but if the evidence that no *capias ad satisfaciendum* issued is received without objection, and the court charge that none is necessary, this is wrong.

Judgment reversed.