## Wetmore, Appellant, *v.* Wetmore.

[Marked to be reported.]

*Judgments—Revival—Notice—Terre tenant—Married women—Act of April* 16, 1849, *P. L.* 664.

The intent of the act of April 16, 1849, relating to revival of judgments, was to continue the lien of an original judgment against the lands of the debtor by a revival against him alone, unless the purchaser or terre tenant put his deed upon record, or was in actual possession, in which cases the five years commenced to run in his favor from the date of recording the deed, or from the date he took possession of the land, personally or by his tenant.  The only notices provided by the act are (1) by recording the deed, and (2) by taking possession of the land.  Notice by actual knowledge on part of judgment creditors of an unrecorded conveyance, is not within the meaning of the act.

Where land bound by a judgment is conveyed by the owner to his wife, with the knowledge of the judgment creditor, and the husband and wife continue to live upon the land, the transfer of the title to the wife carries with it the right to the possession, and the possession thus acquired by the wife is sufficient notice under the act of April 16, 1849, to require proceedings to revive the judgment to be commenced within five years from the date of the deed to the wife.

Argued May 1, 1893.  Appeal, No. 105, Jan. T., 1893, by plaintiffs, Clifford Wetmore et al., administrators of Horace Wetmore, deceased, from judgment of C. P. Warren Co.,

March T., 1891, No. 20, on verdict for defendant, Rachel Wetmore, terre tenant. Before STERRETT, C. J., WILLIAMS, MC-COLLUM, DEAN and THOMPSON, JJ.

Scire facias to revive judgment.

The facts appear by the opinion of the Supreme Court.

At the trial, before NOYES, P. J., defendant proposed to show that plaintiffs' decedent, Horace Wetmore, knew of the conveyance on the 21st of June, 1878, to Rachel Wetmore, the terre tenant; that he had taken some part in the negotiations, and that by the conveyance of the title to the land, down to the lien judgment to Rachel Wetmore, he had got matters now in shape that he wished, or to that effect.

Objected to as incompetent and irrelevant; and anything going to show that he intended to release the lien of this judgment on this land is without consideration.

Objection overruled and exceptions. [1]

The evidence was as follows:

" Q. Now you may state what Horace Wetmore stated to you in 1878, regarding either the judgment or the conveyance to Rachel Wetmore. A. The conversation I had with him, I think about that time, I wouldn't state that it was in 1878. He was talking about some trouble that he had with his son, about paying debts for him. Q. Which son? A. For Martin; and he said it was so fixed then that he would not be obliged to pay any more of his debts; that the property was deeded to Rachel Wetmore, and they couldn't take the property for his debts; that he had paid considerable for his son, and that would set him off. The conversation was in Mr. Wetmore's house; I think it was the fore part of the winter of 1878 that I had the conversation with him. He spoke in that conversation about the land having been conveyed to Rachel Wetmore. I had quite a number of conversations with him on the subject, I cannot tell how long after, I talked with him so many times about it,—probably it might have been a year, and it might have been six months; I resided one of his nearest neighbors; I was there quite often. His conversation at other times would be about the same; he referred to the place that they lived on, I suppose; he didn't name any land in particular; I mean the winter of 1878 and '79."

The court charged in part as follows:

" [It is alleged by the defendant that although her deed was not upon record, and although the possession of the land remained the same after the conveyance as before, yet the judgment does not bind her, because she was not notified of a previous revival of the judgment, or was not brought in and made a party to the proceedings; and because at the time of the conveyance, and of the previous revival of the judgment, Horace Wetmore knew that she was the owner of the land, and had a deed for it. I am of the opinion, in view of the cases cited, that this is the law, that Horace Wetmore, knowing that Rachel Wetmore had received a conveyance from Charles Dinsmoor, who had received one from her husband, was bound to give notice to her when he revived his judgment. I instruct you that you should return a verdict in favor of the defendant.]" [2]

Plaintiff's points were among others as follows:

" 2. The issuance and service of the scire facias upon Rachel Wetmore within five years from the time of the recording of her deed, was sufficient to continue the lien of the judgment against the land in question, although Horace Wetmore, the decedent, might have had actual notice of the conveyance of the land to her five years and more prior to the issuance and service of said writ." Refused. [3]

3. " The conveyance by Martin L. Wetmore to Charles Dinsmoor, and of Charles Dinsmoor to Rachel Wetmore, of the land in question, being voluntary, and there being no change of possession following said conveyance of the land, the limitation of the lien of the judgment against Rachel Wetmore, as terre tenant of said land, would not begin to run until she had recorded her deed for the same." Refused. [4]

4. " Under all the evidence the plaintiff is entitled to recover both as against Martin L. Wetmore as defendant, and Rachel Wetmore as terre tenant." Refused. [5]

Defendant's points among others were as follows:

" 3. If Horace Wetmore, at any time before he revived his judgment against Martin F. Wetmore, on the 25th of April, 1881, knew of the previous conveyance to Rachel Wetmore of the land bound by said judgment, it was his duty, at the time of such revival, to make her a party to the proceedings to revive

the judgment, and by his failure to do so, in case of such knowledge, his judgment ceased to be a lien upon the land so conveyed to said Rachel Wetmore, and the plaintiff ought not to recover." Affirmed. [6]

" 4. Under the uncontradicted testimony in the case, the verdict must be in favor of Rachel Wetmore, terre tenant." Affirmed. [7]

Verdict and judgment for Rachel Wetmore, terre tenant. Plaintiffs appealed.

*Errors assigned* were (1) ruling on evidence ; (2–7) instructions ; quoting instructions, bill of exception and evidence.

*W. W. Wilbur*, of *Wilbur & Schnur*, and *W. M. Lindsey* of *Lindsey & Parmlee*, for appellant, cited : Act, 1798, Purd. 945 ; act of March 26, 1827 ; Armstrong's Ap., 5 W. & S. 352 ; act of April 16, 1849 ; Porter v. Hitchcock, 98 Pa. 625 ; McCray v. Clark, 82 Pa. 457 ; Buck's Ap., 100 Pa. 109 ; Meinweiser v. Hains, 110 Pa. 468 ; act of June 1, 1887 ; P. L. 289 ; Armington v. Rau, 100 Pa. 165.

*D. I. Ball*, *C. C. Thompson* with him, for appellee, cited : McCray v. Clark, 82 Pa. 457 ; Smith's Ap., 47 Pa. 128 ; Speer v. Evans, 47 Pa. 141 ; Meehan v. Williams, 48 Pa. 238 ; Haak's Ap., 100 Pa. 59 ; Armington v. Rau, 100 Pa. 165 ; Kinnear v. Gealy, 1 Penny. 284 ; Rhoads's Ap., 11 W. N. 276 ; Ficke's Ap., 71 Pa. 449.

OPINION BY Mr. JUSTICE DEAN, May 22, 1893 :

Martin F. Wetmore, the husband of Rachel Wetmore, the defendant, and son of Horace Wetmore, plaintiff's intestate, purchased in 1866 a farm of about 87 acres in Warren county. With his wife and family he lived upon it from that time down to the trial of this suit in October, 1892. He became indebted to his father, Horace Wetmore, in the sum of $636.34 ; for this he gave a judgment note on the 2d of May, 1871, and his father the same day entered it of record to 277 March Term, 1871. Martin confessed revival of this judgment May 2, 1876 ; again April 25, 1881 ; again January 15, 1886, when with interest it amounted to $1,041.80. The plaintiff and father, Horace Wet-

more, died in December, 1889, and the present plaintiffs took out letters of administration on his estate. It will be noticed that so far as concerns Martin Wetmore, the lien of the judgment as against his land was continued without interruption from the date of the original entry down to the trial of this issue. But on the 21st of June, 1878, through the intervention of Charles Dinsmoor as trustee, he made a voluntary conveyance of the 87 acres of land to his wife, Rachel Wetmore, this terre tenant.

The deed was not recorded until July 24, 1890, more than twelve years after its date. On January 3, 1891, this sci. fa. to revive with notice to Rachel Wetmore, terre tenant, was sued out by the administrators of Horace Wetmore and served upon her January 15, 1891. She denied that the land conveyed to her by her husband more than twelve years before could be made subject to the lien of this judgment, claiming that as to her land the lien of the judgment ended at the expiration of five years from the date of her deed, the 21st of June, 1878.

Although the deed was not recorded, and was retained in her possession for more than twelve years, it was alleged, its execution and delivery to her at its date was known to Horace Wetmore, her father-in-law and plaintiff in the judgment; in fact, with his knowledge and procurement, his son, her husband, made the conveyance to her; that therefore having actual notice of the deed, he is to be treated as if there had been the constructive notice of a record of it. The learned court below took this view of the law, and directed a verdict in favor of Rachel Wetmore, the terre tenant; from the judgment entered on that verdict the plaintiffs have taken this appeal.

We think the judgment is right, but the reason for it is wrong. The whole question turns on the construction to be given the act of April 16, 1849.

Under the act of 1798, to revive and continue the lien of the judgment against the land bound at the entry of the judgment, the writ must be served on the terre tenant and the defendant when they could be found; if the land were unoccupied and defendant and terre tenant could not be found, then judgment of revival was taken by proclamation. In the revival of judgments under this act practices had crept in which tended to uncertainty, and consequently not seldom worked gross injustice

Among these were constructive revivals of judgments by issuing execution; or by stay of execution, or by deferring 'date of maturity of judgment, and in other cases it was held that the lien continued although sci. fa. to revive had not been issued within five years. This led to the passage of the act of 26th of March, 1827, as a supplement to the act of 1798. It expressly enacts that all entries or revivals of judgments under the act of 1798 shall continue a lien on the real estate of defendant for the term of five years, and no longer; they may be revived within that period by agreement of the parties and terre tenants in writing filed, or a sci. fa. to revive under the act of 1798 may be sued out within that period. But the act of 1827 ended all constructive revivals, or constructive continuations of lien. But in the course of time this was found to work injustice to the judgment creditor, for the limitation of five years commenced to run in favor of the terre tenant from the date of entry or revival of the judgment, whether he was in possession of the land or not, and whether his deed was recorded or not. The judgment creditor had no certain means of knowledge as to whether there had been a grant, by the debtor, of the land bound by the lien of his judgment to a third party. To remedy this, the act of 16th of April, 1849, was passed, which enacts:

" In all cases when a judgment has been or shall be regularly revived between the original parties, the period of five years during which the lien of the original judgment continues shall only commence to run in favor of the terre tenant from the time that he or she has placed their deed on record. Provided: That this act shall not apply to any cases which have been finally adjudicated, or where the terre tenant is in actual possession of the land bound by such judgment by himself or tenant."

Unquestionably, the obvious intent of this act was to continue the lien of the original judgment against the land of the debtor by a revival against him alone, unless the purchaser or terre tenant put his deed upon record, or was in actual possession, in which cases the five years commenced to run in his favor from the date of recording the deed, or from the date he took possession of the land, personally or by his tenant. We so held in Porter v. Hitchcock, 98 Pa. 625. It was intended by that act to protect the purchaser, as well as to relieve the

judgment creditor from the uncertainty incident to the construction given the acts of 1798 and 1827. It recognizes two, and only two, kinds of notice to the judgment creditor that the land bound by the lien of his judgment has passed to another than his debtor; both notices are constructive; the one, the public record which he is presumed to know; the other, the occupancy of the land which he is presumed to see; from the date of the existence of either fact, the five years commence to run in favor of the terre tenant. This act is in the highest degree promotive of open, fair dealing; imposes hardship on no one; is a protection to creditor, debtor, and purchaser.

The court below, following McCray v. Clark, 82 Pa. 457, reads into the act of 1849 a third notice from which the five years begin to run, that is, actual knowledge of the conveyance, although it be not of record. But this violates the plain intent of the act; the only safety is a strict adherence to its provision. McCray v. Clark was in effect overruled in Porter v. Hitchcock, 98 Pa. 625, and in Buck's Ap., 100 Pa. 109.

The notice to affect the judgment creditor and protect the terre tenant, required by the act, is not of the deed but the record of it. As this deed was not of record in the lifetime of Horace Wetmore, the fact that it was delivered with his knowledge and procurement is no protection to the terre tenant, for the act of 1849 does not so say. If the terre tenant be out of possession, the deed must be put on record.

But it is incontrovertibly proven that Horace Wetmore knew the deed had been made to Rachel Wetmore on the 21st of June, 1878. This put the legal title in her, and drew with it the right to possession; the presumption is, that one in possession, having the legal title, is in possession under that title; it excludes the idea of any other right or claim. Here, from 1871 up to the 21st of June, 1878, the legal title was in Martin F. Wetmore; he lived with his wife, Rachel Wetmore, on the land; the presumption during that time was, that he was in possession; on that day the legal title passed to the wife, and thereafter she was in possession. While the marital relation continued he would remain there, not because he had a right to possession of the land, but because he had a right to live with his wife. But independent of his marital right, he had no right there, and could have successfully asserted none. The

possession of the wife was not only a constructive legal pos-
session but an actual one, as to every person who knew she
was the holder of the legal title. She could have no other pos-
session than the one she did have, unless she drove him from
her premises. This possession was visible and open to all who
knew the land was hers under her deed. Her father-in-law,
Horace Wetmore, knew she was in possession and when that
possession had commenced; Dinsmore knew it, for he had acted
as a vehicle for transmitting the legal title; her husband knew
it, for he had made the conveyance. Strangers who were not
aware of a conveyance, as in Buck's Ap., would not, perhaps,
have been bound to distinguish between the possession of the
husband prior to the date of the deed and that of the wife sub-
sequent to it, but those who knew that the conveyance had
been made to her must be presumed to have known that she
was in possession, under the conveyance.

Rachel Wetmore, then, the terre tenant, from the date of
her deed, 21st of June, 1878, was in actual possession of the
land bound by the lien of this judgment, as owner, and was
known by the plaintiff to be in possession. As to her, against
Horace Wetmore, this judgment creditor, the five years began
to run from the date of her possession; and, because no sci. fa.
was issued to revive the judgment with notice to her within
the five years, her land is freed from it, not because the judg-
ment creditor had actual notice of the conveyance, but because
she was in actual possession of the land under it, and thus
comes within the protection of the act of 1849.

The judgment of the court below is affirmed, and appeal dis-
missed at costs of appellant.