## Klein et al. v. Anderson et ux.

*Stewart P. McConnel,* for plaintiffs.
*Moorhead & Marshall,* for defendants.

WILSON, J., May 14, 1940.—The matter before us is a rule to strike off a judgment which was duly before the court en banc upon argument c. a. v.

R. B. Anderson and W. R. Anderson, defendants, were the owners of certain real estate when, on December 19, 1932, plaintiffs entered a certain judgment against them at no. 107, March term, 1933, d. s. b. By deed dated December 12, 1935, and recorded January 31, 1936, defendants conveyed said real estate to Clayton R. Toogood and Loretta Toogood, his wife.

On June 15, 1938, at no. 16, September term, 1938, a scire facias was issued to revive the judgment at no. 107, March term, 1933, as against defendants. The Toogoods, grantees in the deed recorded January 31, 1936, were not named as terre-tenants. On October 4, 1939, the sheriff returned said writ of scire facias as unexecuted.

By deed dated July 24, 1939, and recorded July 31, 1939, Clayton R. Toogood conveyed an interest in the real estate to Loretta M. Toogood, his wife. And by deed dated August 30, 1939, and recorded the same day, the Toogoods conveyed said real estate in fee to Albert H. Gredel.

On October 4, 1939, the same day on which the sheriff returned the scire facias at no. 16, September term, 1938, unexecuted, plaintiffs issued an alias scire facias, at the same number and term, to revive the judgment at no. 16, September term, 1938, as against defendants. In the record of this alias scire facias no terre-tenant is named, but on the præcipe on file Albert H. Gredel is named as terre-tenant, is so designated in the writ, and the sheriff's return shows service on an adult member of the family with which he resided on October 6, 1939.

On November 17, 1939, upon præcipe filed, judgment was entered upon the alias scire facias against defendants and Albert H. Gredel, as terre-tenant.

On February 16, 1940, the aforesaid Albert H. Gredel presented his petition and a rule issued on plaintiffs to show cause why the judgment should not be stricken

from the record. No depositions were taken and the questions involved are submitted on the record, the petition, oral argument, and briefs.

The terre-tenant's principal contention in support of the rule is that the lien of the judgment as against the land of the terre-tenant was lost, because the scire facias to revive had not issued until more than five years had elapsed from the entry of the original judgment.

The question presented has been repeatedly before our appellate courts, which have determined it at some variance. To in some measure harmonize them, and to gather the purport of the controlling authorities, we should first consider the acts of assembly governing the lien and revival of judgments. These acts are four in number, as follows: section 2 of the Act of April 4, 1798, 3 Sm. L. 331, 12 PS §864, and also section 3; section 1 of the Act of March 26, 1827, 9 Sm. L. 303, and section 1 of the Act of June 1, 1887, P. L. 289, amending the Act of 1827, supra; section 8 of the Act of April 16, 1849, P. L. 663, 12 PS §872.

[The court here quoted the relevant statutes in full.]

Section 2 of the Act of 1798 and the Act of 1827 purport to restrict the lien of a judgment to the period of five years following its entry. . . .

[The court here proceeded to quote at length from Lyon, to use, v. Cleveland, 170 Pa. 611, Fetterman v. Murphy, 4 Watts 424, Brown's Appeal, 91 Pa. 485, McCahan v. Elliott, 103 Pa. 634, Shannon v. Newton, 132 Pa. 375, and Le Bar et al., to use, v. Patterson, 123 Pa. Superior Ct. 491.]

Therefore, beginning with The Bank of North America v. Fitzsimons, 3 Binn. 342 (1811), if not sooner, the courts have uniformly held to the present that, as between the original plaintiff and defendant, the lien of a judgment as against the land of a defendant was not confined to a period of five years from the entry of the judgment, but continued for possibly 20 years after entry, and that the Acts of 1798, 1827, and 1887 were operative only as

to grantees, mortgagees, and other judgment creditors. Hence, in the matter before us, we need only consider the rights of plaintiff as against the land conveyed by defendants, and of which Albert H. Gredel is now terre-tenant, insofar as the same are established, defined, and limited by the aforesaid acts of assembly.

[The court then proceeded to discuss and quote at length from Little v. Smyser, 10 Pa. 381, Zerns, etc., v. Watson, for use, 11 Pa. 260, Fursht v. Overdeer, 3 W. & S. 470, and to cite First National Bank & Trust Co. et al. v. Miller et al., 322 Pa. 473.]

From the foregoing authorities we conclude: That the Acts of 1798 and 1827, as amended by the Act of 1887, limit the lien of a judgment to five years from the date of its entry as against grantees, mortgagees, and intervening judgment creditors; that in order to continue as a lien beyond the five years, as against grantees, mortgagees, and intervening judgment creditors, judgment must be revived by agreement or by scire facias within the five years of entry of the judgment; and that, to effect the revival, as against terre-tenants, if such can be ascertained by possession or examination of public records, such terre-tenant must sign an agreement of revival, or be named in the writ of scire facias; else, at the expiration of five years from the entry of the judgment, its lien against the land of the terre-tenant is lost. These conclusions are consistent with the clear text of the acts and are supported by all ascertainable authority.

The question here arises: How can the Act of 1849, and the decisions thereon, be harmonized with our foregoing conclusions? As an aid to sequence of discussion, we again quote the Act of 1849 in full:

[The court here proceeded again to quote the Act of 1849, and then discussed at length Porter v. Hitchcock, 98 Pa. 625, Wetmore v. Wetmore, 155 Pa. 507, and Uhler v. Moses, 200 Pa. 498. Referring to the last-mentioned case, the court continued:]

In holding that the Act of 1887 did not repeal the Act of 1849 the Supreme Court did not reverse its past rulings on the Acts of 1798, 1827, and 1887, to the effect that a terre-tenant whose deed is on record must be made a party to the scire facias to revive, and that a revival without notice to such a terre-tenant is a nullity. What was decided with respect to terre-tenants whose deeds were recorded under the Act of 1849 was (p. 502) : "It [the lien] was to continue five years from the date the terre-tenant's deed was recorded, under the act of 1849." All that the Act of 1849 did, as decided by Mr. Justice Dean, was to extend the lien of a judgment as against the land of the terre-tenant for a period of five years from the recording of the terre-tenant's deed. The Uhler case could not and did not hold that the scire facias against defendant alone revived the judgment as against the terre-tenant whose deed was on record, but who received no notice. To have so held would have annulled the plain provisions of the Acts of 1798, 1827, and 1887. There was nothing inconsistent and it was within the power of the legislature, by the Act of 1849, to extend the lien of valid judgments against terre-tenants whose deeds as grantees were on record. Therefore, Justice Dean did not decide that the land could be sold on the fieri facias because the judgment had been revived, for it had not been revived against the terre-tenant until over five years from the date of the entry of the judgment. What Justice Dean decided, and all he decided, was that for five years from November 13, 1895, the date upon which the terre-tenant's deed was recorded, the lien of the original judgment entered October 6, 1892, was such a lien against the land in possession of the terre-tenant as would support its seizure and sale on a fieri facias on April 13, 1898. In the light of many subsequent decisions the decision of the Uhler case can be digested in no way other than we have indicated.

The Act of 1849 next appears in Kefover et al. v. Hustead et al., 294 Pa. 474 (1928), in which judgment

was entered September 21, 1915; deeds were recorded November 23, 1917, and March 2, 1918; on March 6, 1918, defendant died, and on December 26, 1920, scire facias to revive issued against the executors of plaintiff, with notice to the terre-tenant. Mr. Justice Sadler states the crucial facts as follows (p. 477):

"On December 26, 1920, a few months more than five years from the date of entry of the judgment, and practically two years and ten months after his decease, but, within five years of the dates of the recording of the deeds to the terre-tenants, a sci. fa. to revive was issued against the executors of Hustead and the grantees of the land."

[After quoting at length from Justice Sadler's opinion, the court continued:]

From this it appears that Mr. Justice Sadler held the scire facias good, not by reason of the death of defendant, but for the reason that the lien of the judgment, as against the terre-tenant, by virtue of the Act of 1849, was extended for five years from the recording of his deed.

[The court then proceeded to discuss Farmers National Bank & Trust Co., etc., to use, v. Barrett et al., 321 Pa. 273, quoting at length from Chief Justice Kephart's opinion and continuing:]

In this case Chief Justice Kephart, like Justice Dean in the Uhler case, held that the lien of a judgment, as against the terre-tenant, was continued for five years after the recording of the conveyance to him, and would sustain levy and sale by fieri facias. We do not agree with the former chief justice, that the contention of appellant, that the five years should not run if at the time of the revival against the original judgment debtor the terre-tenant's deed is on record, is "unquestionably reasonable", because it disregards the express provisions of the Act of 1849, and because the possibility of loss of liens by the recording of deeds, at or about the expiration of the five years from the entry of a judgment, was one of the evils the Act of 1849 was passed to cure. Neither do we believe Mr. Justice Dean, in the Uhler case, was free

to hold other than he did. When the former chief justice says the decision in the Uhler case "has the effect of a rule of property", the only reasonable interpretation to place on the dictum is that he refers to the length of the life of the lien of a valid judgment against land of a terre-tenant who has recorded his deed. To require a plaintiff in a judgment to make a last-minute search for adverse conveyances from defendant to a terre-tenant before issuing a scire facias to revive, which scire facias must make such terre-tenant a party or else the lien be possibly lost, is anything but a rule of property, and well it is that it was provided against by the Act of 1849. If search discloses a valid judgment, followed by a conveyance to a terre-tenant, the terre-tenant may be brought in any time within five years of the recording of his deed, with the judgment continued as a lien against the land. This is a rule of property, and a good one, and is so held in the decisions, and this undoubtedly is the rule to which Chief Justice Kephart referred. . . .

[After again quoting from Lyon v. Cleveland, supra, and quoting from the syllabus of First National Bank & Trust Co. et al. v. Miller et al., supra, the court proceeded to discuss the latter case as follows:]

The facts, material to our inquiry, are as follows: On May 19, 1927, judgment was entered; on November 18, 1927, deed to terre-tenant was recorded; on May 12, 1932, scire facias issued against the original defendant alone, upon which judgment was entered on June 21, 1932, and on the same day scire facias issued to revive said judgment of June 21, 1932, with notice to the terre-tenant, judgment upon which was entered January 6, 1933. We assume that the subsequent sale of the land was on fieri facias issued on this last judgment, as the appeal is from no. 45, March term, 1933, in the Court of Common Pleas of Greene County. The appeal was taken from an order of the lower court dismissing exceptions to a sheriff's distribution, which had awarded to intervening creditors their claims in full, with the balance to plaintiff as part

satisfaction of the original judgment. Plaintiff was the appellant. As no one contested appellant's receipt of the balance of the fund, we may overlook the apparent inconsistency of his receiving anything from the sale of a terre-tenant's land against which his judgment was not a lien. All the matters determined by the Supreme Court were necessary in passing on the priority of the intervening judgment creditors, and in no way may be considered dicta. And in considering the opinion of Mr. Chief Justice Kephart we must keep in mind the law as we have already stated it, and that, on the facts before the Supreme Court, the priority of the lien of the original judgment, as against intervening judgment creditors, expired May 19, 1932, or over a month before the issuance of the scire facias of June 21, 1932; that the scire facias to revive the judgment, as against the terre-tenant, whose deed was on record, was abortive and void as such terre-tenant was not joined as a party; that the priority of the lien of the original judgment, as against the terre-tenant, continued to November 18, 1932, or for five years following the entry of his deed; and that, so long as the original judgment remained a lien against the land, such judgment could be revived as a lien as against the land of the terre-tenant within five years of the recording of his deed. As to the purport of the various acts of assembly and the accumulated authority, the opinion of the chief justice is on all fours with the contention we are here making.

[After quoting at length from the opinion of the chief justice in First National Bank & Trust Company et al., supra, the court proceeded to discuss the following lower court cases, which it held to be in harmony with its conclusions: First National Bank of Dallas v. Spencer et al., 29 Luz. L. R. Rep. 411; Farmers National Bank & Trust Co. of Reading, to use, v. Barrett et al., 28 Berks 16; Stine v. McVeytown National Bank et al., 21 D. & C. 663; and Huntington v. Minard et al., 23 D. & C. 244.]

Section 8 of the Act of 1849 uses the expression, "in all cases when a judgment has been or shall be regularly revived between the original parties, the period of five years during which the lien of the judgment continues, shall only commence to run in favor of the terre-tenant, from the time that he or she has placed their deed on record . . .". The authorities we have here marshaled hold that the lien of the *original judgment* continues as a lien against the land of a terre-tenant for five years from the recording of his deed. The Act of 1849 has to include original judgments as well as revivals, in order to establish a uniform rule of property. The Supreme Court has placed original judgments on a parity with revivals, and this is the law regardless of the wording of the act. In Farmers National Bank & Trust Co. of Reading, to use, v. Barrett et al., supra, Chief Justice Kephart asked the question: Has a judgment creditor at all times five years from the recording of the terre-tenant's deed to revive as against him; and answered in the affirmative.

When we eliminate the error that the Act of 1849 applies only to revivals, it is then that the acts of assembly and the decisions of the Supreme Court make a consistent whole, in accord with right reason, justice, and equity. The conclusion reached was one of growth, possibly in full flower first in the opinions of Chief Justice Kephart. The difficulty has been for the legal profession to keep up. But now that the rules distinctly appear all the profession has to do is know the rules, and title and lien searchers bear in mind that wherever an adverse conveyance is made of land against which there is the lien of a valid judgment, the lien of such judgment is continued as a lien against the land of the grantee, terre-tenant, for five years from the date of the recording of his deed. To be sure, if a judgment is over five years old, a defendant may convey his land free of the lien. But not so if time has not robbed the judgment of its lien—then such lien is continued for five years from the recording of the conveyance.

148

A brief recapitulation may help understanding. The Act of 1798 limited the lien of judgments to five years. But the courts held that this act applied only to *grantees, mortgagees, and intervening creditors.* The Acts of 1827 and 1887 dealt with the lien of judgments, as against such grantees, mortgagees, and intervening creditors, and for their revival by scire facias or agreement, and expressly provided that a lien against a terre-tenant could not be revived or continued except by agreement or scire facias to which such terre-tenant was a party. The courts have not modified said Acts of 1827 and 1887. The Act of 1849 clearly lengthened the lien of a judgment as against a terre-tenant to five years from the time of the entry of his deed. This is clearly expressed, and so recognized, in all decisions of the Supreme Court. We most heartily agree, and can find nothing in the Act of 1849 to indicate legislative intent to exclude the lien of original judgments from its beneficent purposes.

The judgment before us was entered December 19, 1932; the deed of defendants to the Toogoods was recorded January 31, 1936; and thereby the lien of the judgment was extended for five years, or to January 31, 1941, and anyone taking title from the Toogoods took the land subject to the lien of the original judgment; subsequent conveyances from the first terre-tenants would not free the land of the lien; therefore, Albert H. Gredel, the present terre-tenant, whose deed was both dated and recorded August 30, 1939, took title to the land subject to the lien of the original judgment. The alias scire facias of October 4, 1939, in which Albert H. Gredel was named as terre-tenant, and which was served on him two days later, properly revived the lien of the original judgment as against him, and judgment thereon was properly entered. In case plaintiffs have any doubt as to the propriety of their procedure up to the present, they have until January 31, 1941, to correct it, if correction is necessary and allowable by law.

[The court then proceeded to consider the cases relied upon by counsel for the terre-tenant. It distinguished Pipher, etc., v. Duke et al., 13 Pa. Superior Ct. 279, on the grounds that in that case the deed was not recorded until over five years after the judgment was entered, and that it had been decided while the Superior Court was still under the misapprehension that the Act of 1849 had been repealed by the Act of 1887. It pointed out that another case relied upon by the terre-tenant, Italo-French Produce Co. v. Dellapa et al., 1 D. & C. 216, had been decided on the authority of Pipher, etc., v. Duke et al., supra, and also by a possible erroneous reliance upon the second syllabus of Uhler v. Moses, supra, which is mistaken reporting.]

Another authority claimed by the terre-tenant is Everett Hardwood Lumber Co. v. Calhoun, 121 Pa. Superior Ct. 451 (March 10, 1936). In this case judgment was entered April 18, 1927; deed to terre-tenant was executed and delivered February 1, 1928, and not recorded, but terre-tenant went into possession April 1, 1928; on April 18, 1932, an amicable revival was entered as against the original defendant, and in which terre-tenant was not a party; and on December 6, 1932, a scire facias was issued against both defendant and the terre-tenant. After verdict for defendant terre-tenant, the lower court entered judgment n. o. v. for plaintiff, which, upon appeal to the Superior Court, was affirmed in an opinion by Judge James.

The contention of appellant was that the lien of the judgment was lost by failure to revive it as against the terre-tenant within five years of the entry of the original judgment. The judgment was entered April 18, 1927; possession was taken by the terre-tenant April 1, 1928; and the scire facias under attack issued December 6, 1932. In affirming judgment n. o. v. for plaintiff, Judge James said: "In the instant case, the writ of scire facias was issued within five years of the taking of possession by the appellant, terre-tenant."

After citing and quoting the various acts of assembly, and Wetmore v. Wetmore, supra, Porter v. Hitchcock, supra, Lyon, to use, v. Cleveland, supra, Uhler v. Moses, supra, and Kefover et al. v. Hustead et al., Judge James continues as follows (p. 455) :

"From these cases the general rule may be found, That where a judgment is revived within five years by means of the issuance of a writ of scire facias or by an amicable agreement, such revival will bind land that has been conveyed to a terre tenant if the judgment creditor revives the judgment within five years of the recording of the deed or within five years of the taking of actual possession by the terre tenant. In the instant case, the writ of scire facias was issued within five years of the taking of the possession by the appellant, terre tenant. Suter v. Findley, 5 Pa. Superior Ct. 163—cited by appellant—was decided under the assumption that the Act of 1887 was repugnant to the Act of April 16, 1849. This was overruled by Uhler v. Moses, supra. In Barrell v. Adams, 26 Pa. Superior Ct. 635, the deed of the terre tenants was on record more than seven years before the terre tenants were attempted to be brought in. In Miller Brothers v. Boyotz, 96 Pa. Superior Ct. 208, the original judgment was not revived within the period of five years. To sustain appellant's position would be in effect to reverse Uhler v. Moses, supra, which has been recognized as the law of this commonwealth for more than thirty-five years."

The opinion in this case was handed down March 10, 1936; the opinion in Farmers National Bank & Trust Co. of Reading, to use, v. Barrett et al., supra, was handed down March 21, 1936; and the opinion in First National Bank & Trust Co. et al. v. Miller et al., supra, was handed down June 26, 1936; so Judge James did not have the opinions of Chief Justice Kephart before him. But an impartial reading of all our quotations from Judge James' opinion leads to but one conclusion, which is that the Superior Court is now in complete agreement with

the Supreme Court, and that Everett Hardwood Lumber Co. v. Calhoun, supra, instead of supporting the contention of the terre-tenant before us, is conclusive authority to the reverse, and conclusively sustains the conclusions we have reached.

Miller Brothers v. Boyotz et ux., 96 Pa. Superior Ct. 208 (1929), which Judge James casts aside as not influencing Everett Hardwood Lumber Co. v. Calhoun, supra, is not cited by counsel for the terre-tenant, but is brought to our attention by counsel for plaintiffs. In this case the judgment was entered February 18, 1914; on April 5, 1919, defendant executed a deed of conveyance for the land against which the judgment was a lien; on April 26, 1919, a scire facias to revive was issued. The lien of a judgment, as against grantees, expires at the end of five years from the date of the entry of the judgment; therefore, the Superior Court very properly reversed Judge Copeland for entering judgment n. o. v. for plaintiff. Judge Trexler in his opinion considered the Acts of 1849, 1827, and 1887, and the case of Uhler v. Moses, supra. Judge Trexler also cites and quotes from Pipher, etc., v. Duke et al., supra, as we have heretofore quoted, and proceeds (p. 212):

"When a purchaser buys during the time when the judgment is an existing lien on the premises conveyed, he is made aware by an examination of the record that he takes the land subject to the lien and if he does not learn this by investigation, he has constructive notice, for the public record implies knowledge on his part. When he examines the record he is not required to take notice and investigate the status of judgments whose lien has expired. If there is a judgment whose lien is about to expire, and revival of it is sought by process of law or by agreement, the tenant who is in possession or has recorded his deed, is entitled to notice of the proceedings to revive. Armington v. Rau, 100 Pa. 165. If he is not in possession or has not recorded his deed under the acts above quoted, no notice need be given to him. Such revival, however,

must be had within five years in order to affect a *purchaser* of the land. We do not think it was the purpose of the Act of 1849 to change the law as it then stood that 'by the lapse of five years without issuing a scire facias upon it for the purpose of recovering it *(the buyer)* stood a purchaser of his land in fee simple discharged from the lien of the judgment': Arrison v. Commonwealth, 1 Watts 374, 381." (Italics supplied.)

This, in our opinion, overrules Pipher, etc., v. Duke et al., supra, and we are convinced that Judge Trexler brought that case into his opinion for that purpose.

It remains for us to consider LeBar et al., to use, v. Patterson, supra, to which we have already referred, and in which in his opinion Judge James cites First National Bank & Trust Co. et al. v. Miller et al., supra. This case appears in terre-tenant's brief.

Mrs. Patterson, defendant and appellee, became the owner of certain lands, and as part of the purchase money gave a judgment note, which was entered against her in favor of plaintiffs on November 29, 1920. On January 20, 1921, defendant's mortgage of the land was entered of record. On March 31, 1923, deed of defendant to Devalle and wife was recorded. In the recital of this deed it appeared that the grantees took title subject to the payment of the judgment and mortgage. On November 23, 1928, an amicable scire facias was entered, signed only by Devalle and wife, as terre-tenants. In this scire facias appeared an agreement that the terre-tenants assumed liability for the payment of the original judgment of 1920. It does not appear whether or not judgment on this scire facias was entered against Mrs. Patterson, the defendant.

On August 2, 1933, a scire facias issued to revive the original judgment of 1920, to which defendant filed an affidavit of defense, which claimed that on the facts the original judgment was extinguished by a novation.

On November 13, 1933, the judgment on the scire facias of 1928 was amicably revived against Devalle and wife.

In a case stated defendant contended: (1) That the revivals against the alienees and terre-tenants alone barred a revival of the original judgment against defendant; and (2) that the amicable revivals (as they were expressed, together with the recital as to liens in the deed) constituted a novation as to plaintiff and barred revival of the original judgment. The court below overruled the first reason, but entered judgment for defendant on the second. The Superior Court agreed with the lower court as to the right to revive, but reversed the lower court as to novation, and directed judgment to be entered for plaintiff.

We are not concerned with the question of novation, nor with the lien of the mortgage. A mortgage takes a permanent place in the order of liens, and, in order to preserve the judgment as a lien prior to the mortgage, such judgment had to be revived within five years of entry. This was not done and the mortgage moved ahead of the judgment. We both recognize and agree with the authorities that the five-year life of the lien of a judgment applies as among grantees, mortgagees, and subsequent creditors. But all unreversed authorities positively hold that under the Act of 1849 the lien of a valid judgment, existing at the time of a conveyance to a grantee terre-tenant, as between plaintiff and terre-tenant, is continued as a lien against the land deeded to such terre-tenant for the period of five years following the recording of his deed.

[After quoting the sixth and seventh syllabus paragraphs, and a portion of Judge James' opinion, the court continued:]

The judgment considered was entered November 29, 1920; the deed to the terre-tenant was recorded March 31, 1923, and the amicable scire facias to the terre-tenant was entered November 13, 1928, or over seven months beyond the five years following the recording of the deed. It was in the light of this that Judge James said: "the lien of the original judgment had expired when first it was

amicably revived." In the light of Judge James' opinion in Everett Hardwood Lumber Co. v. Calhoun, supra, and his citation of First National Bank & Trust Co. et al. v. Miller et al., supra, no other meaning can be taken from the expression, "the lien had expired". He was most certainly speaking of the lien under the Act of 1849.

To again advert to the Act of 1849 and revivals, to be sure the strict letter of the law is: "That in all cases where a judgment has been or shall be regularly revived between the original parties." But the act also says:

". . . the period of five years during which the lien of the judgment continues, shall only commence to run in favor of the terre tenant, from the time that he or she has placed their deed . . .".

This relates to the duration of the lien, and the courts have positively declared that such duration applies to the lien of the original judgment as well as to revivals of it. We are at a loss to understand how the Act of 1849 can be kept in force under any other interpretation. The Act of 1798, as interpreted by the courts, limited the lien of judgments as to grantees, mortgagees, and lien creditors to five years from the date of entry, unless plaintiff, within said term of five years, sued out a writ of scire facias to revive the same. Said act also provides that such writs of scire facias shall be served on the terre-tenants. The Act of 1827 provides for the revival of the liens of judgments within the period of five years, not only by scire facias, but also "by agreement of the parties and terre tenants filed in writing and entered on the proper docket". The amendment of 1887 varies the Act of 1827 only in that it provides that terre-tenants whose deeds are on record must "be named as such in the original scire facias". The Act of 1849, as construed by the courts in conjunction with the other acts, gives the judgment a lien for five years from the recording of the deed within which time the judgment creditor may so name the terre-tenant in the scire facias to revive.

Justice Dean, in Uhler v. Moses, supra, said that the Act of 1849 was passed to correct the confusion of the law, as it appeared in Armstrong's Appeal, 5 W. & S. 352. In this case it was expressly decided that, under the Act of 1827, agreements of revival to which the terre-tenant was not a party did not revive the lien of a judgment, as against the land conveyed to him, and that the lien of a judgment, the terre-tenant not joining in an agreement of amicable scire facias, could only be preserved and continued by suing out a writ of scire facias. Therefore, in all the cases where an amicable scire facias appears, to which a known terre-tenant was not a party, there was no "regular revival"; as to the terre-tenant there was no revival at all. This was the reasoning of Chief Justice Kephart in Farmers National Bank & Trust Co. of Reading, to use, v. Barrett et al., supra, in putting aside the question of revival, and holding the fieri facias good, as the Act of 1849 had continued the lien of the original judgment as against the land for five years from the recording of the deed.

The construction placed on the Act of 1827 by Armstrong's Appeal, supra, except as such act may be modified by the Act of 1849, is, in our opinion, still the law of this State. As we have noted in Porter v. Hitchcock, supra, the effect of the Act of 1849 was to alter the rule of the Act of 1827, and that in case the terre-tenant had placed his deed on record, then in a scire facias to revive, in order to continue the lien as against the terre-tenant, such terre-tenant must be named: Armington v. Rau, 100 Pa. 165; Long v. McConnell et al., 158 Pa. 573. Therefore, a scire facias to revive against the original defendant alone, there being a deed on record to a terre-tenant, cannot continue the lien of the judgment as against such terre-tenant. So in such cases there was also no "regular revival"; also, as to the terre-tenant, there was no revival at all. And that was the reason Mr. Justice Dean, in Uhler v. Moses, supra, Judge James in Everett Hardwood Lumber Co. v. Calhoun, supra, and

Chief Justice Kephart, in First National Bank & Trust Co. et al. v. Miller et al., supra, put aside the question of revival, and decided the cases on the extension of the lien of the original judgment under the Act of 1849.

In comparing what Mr. Justice Bell had to say regarding the Act of 1849, in Porter v. Hitchcock, supra, with the 1887 amendment to the Act of 1827, we are convinced that such amendment there found its inspiration. If that were the case, then that amendment certainly did not repeal the Act of 1849 by implication; and when Mr. Justice Dean, in Uhler v. Moses, supra, held that both acts were operative, and construed them as harmoniously as possible, it was the only course open to him, and harmony could only be established by extending the lien of judgments as against terre-tenants for five years from the recording of the deed; for, if the lien of a judgment, original or on scire facias, is to run for five years from the recording of the deed, it can only run if it is alive, and it can only be resuscitated if it is living. Again, if plaintiff in a judgment has been given five years from the recording of the deed to bring in a terre-tenant on scire facias to revive, of very necessity the lien has to be in being when the scire facias issues; and if the date of issue be more than five years from the date of entry of the judgment it is good, provided such date is less than five years after the recording of the deed to the terre-tenant.

This is the law beyond all doubt, and, unless the rule to strike off the judgment can be sustained on grounds other than that we have so far considered, the rule must be discharged.

The second reason in support of the rule is to the effect that the terre-tenant does not appear in the record as a party to the alias scire facias upon which judgment was entered. As we have already pointed out this is correct as to the docket entries, except as to service on Albert H. Gredel, who appeared in the præcipe and writ as returned as terre-tenant. We are convinced the record shows that Albert H. Gredel was properly brought in as terre-tenant

in the alias scire facias of October 4, 1939. Matters relating to irregularities in the scire facias of June 15, 1938, are irrelevant and immaterial, as having no bearing on the regularity and validity of the alias scire facias of October 4, 1939, upon which the judgment sought to be stricken from the record was entered. But we will take into consideration such irregularites in passing on terretenant's contention that the alias scire facias was not properly served on him.

Terre-tenant's contention that the terre-tenant must "be named as such in the original scire facias" is correct, except that the expression quoted refers to an original scire facias, judgment upon which is sought to be revived by a second or subsequent writ, and has no application to an alias scire facias on the original judgment. As already appears in this opinion, a terre-tenant may be brought in any time within five years of the recording of his deed, and during that time the proper procedure is scire facias on the original judgment: First National Bank & Trust Co. et al. v. Miller et al., supra.

Terre-tenant further contends that the copy of the writ served on the adult member of his family was not a true and attested copy, in that the name of Albert H. Gredel did not appear as terre-tenant, or otherwise.

[The court here discussed the relevant pleadings and continued:]

From the foregoing allegations and admissions the fact is established that the name of Albert H. Gredel did not appear as terre-tenant or otherwise in the copy of the writ served, and, as his name as terre-tenant does appear in the writ returned, such copy was not a true copy, as required by the Act of July 9, 1901, P. L. 614, governing service of writs of scire facias. . . .

Keeping in mind that applications to open and strike off judgments are to be disposed of according to equitable principles, the question here is, What should equity do as to this defective service? All decisions hold that service of process must strictly follow the statutory provisions.

[The court here quoted from Bennethum v. Bowers, 133 Pa. 332, Park Bros. & Co., Ltd., v. Oil City Boiler Works, 204 Pa. 453, and Weston Mill Co. v. Brown et al., 1 Kulp 40.]

Therefore, we make the rule absolute and strike off the judgment, as against both defendants and terre-tenant, as entered on the alias scire facias of October 4, 1939. In case we are right, in the body of our opinion, as to terre-tenants and the life of judgment liens, plaintiffs have until January 31, 1941, to proceed by other scire facias on the original judgment. In case we are wrong then the judgment should have been stricken off as to the terre-tenant, in that the judgment had lost its lien. But, in case plantiffs are barred from looking to the terre-tenant, they still would have recourse against the original defendants.

Another and unanswerable reason for striking off the judgment is that the præcipe of October 4, 1939, directs: "Issue alias writ of scire facias to revive and continue the lien of the above judgment, returnable to the 2d Monday of November next." The above judgment is no. 16, September term, 1938. There was no judgment at no. 16, September term, 1938, the writ being returned October 4, 1939, as unexecuted. Although the writ as returned recites: "Whereof the said defendants are convict, as appears of record, etc., at no. 107, March term, 1933, d. s. b.," the præcipe warranted no such recital, as the prothonotary was directed to issue a scire facias to revive a judgment at no. 16, September term, 1938. Our opinion is that a writ must conform to the præcipe that gives it birth, and if there is a material variance, the writ dies.

## Order

And now, May 14, 1940, for the reasons appearing in the foregoing opinion, the rule is made absolute, and it is ordered, adjudged, and decreed that the judgment entered in the Court of Common Pleas of Beaver County, at no. 16, September term, 1938, on alias scire facias to

revive the lien of judgment at no. 16, September term, 1938, be and the same is hereby stricken from the record, and the prothonotary is directed to so note on the record.