## Simmons, Appellant, *v.* Simmons et al.

Argued March 2, 1942.

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Albert H. Aston,* with him *Herman Goldberg,* for appellant.

No appearance was made nor brief filed for appellee.

OPINION BY KELLER, P. J., October 7, 1942:

On July 26, 1934 plaintiff, Pearl Simmons, entered a judgment of record against David Simmons, which thereby became a lien on certain land owned by him. On May 15, 1935, David Simmons conveyed this land, through a straw man, to himself and his wife, Cecile

Simmons, the appellee, as tenants by the entireties. These deeds were recorded on May 16, 1935. David Simmons died December 29, 1939, leaving a will, in which he named his son, James Simmons, as executor, and letters testamentary were issued to him. On May 6, 1940, a praecipe for writ of scire facias sur the above judgment, naming 'David Simmons, deceased, James Simmons, Executor', as defendant, and Cecile Simmons, as terre-tenant, was filed, and the writ issued same day, and was served on Cecile Simmons on May 13, 1940. On July 16, 1940, James Simmons, executor of the will of David Simmons, for and on behalf of the estate of David Simmons, deceased, filed a paper admitting that there was no known defense to the judgment aforesaid and authorized the prothonotary to enter judgment in favor of the plaintiff and against the defendant in the sum of $1000, with interest from October 4, 1931, as specified in the original judgment, which was done.

A case-stated was then filed, by which the plaintiff and the terre-tenant asked the court below to decide— reserving the right to appeal—whether, on May 6, 1940, when said writ of scire facias issued, the judgment abovementioned was a lien on the property owned by Cecile Simmons, by virtue of the deed to her and David Simmons as tenants by entireties, and the death of David Simmons as aforesaid. The court below held that it was not and entered judgment for Cecile Simmons. The plaintiff appealed.

The question to be decided is: Where land, subject to a valid judgment, is conveyed by deed, which is at once recorded, does the lien of the judgment bind the land in the possession of the terre-tenant for a period of five years from the date of the recording of the deed, even though the judgment was not subsequently revived against the *judgment debtor* by scire facias within five years of the entry of the judgment? The question is not without difficulty and the decisions of the Supreme Court are not all in harmony, but we are of opinion

that the language used in some of its latest pronouncements settles the question in the affirmative.

The very recent case of *Farmers National Bank & Trust Co., to use, &c. v. Barrett,* 321 Pa. 273, 184 A. 128, definitely ruled that a judgment creditor may revive the lien of his judgment as against a terre-tenant at any time within five years from the recording of the deed to the terre-tenant; and that this right is not affected by the fact that after the deed to the terre-tenant had been placed on record the judgment was revived against the judgment debtor alone, without bringing in the terre-tenant. The only difference between that case and this one is that in the present case the judgment was not revived against the judgment debtor—who no longer owned the land—within five years after its entry. But, on this point, an even later decision of the Supreme Court—*First National Bank & Trust Co. et al. v. Miller,* 322 Pa. 473, 186 A. 87—has ruled (p. 476) that the issuance of a scire facias, within five years of the date of the judgment, to revive it against the judgment debtor alone, without bringing in the terre-tenant whose deed had been recorded, and the obtaining of a judgment on said scire facias against the judgment debtor alone, *has no effect whatever* as respects the terre tenant; that it neither continues nor preserves the lien of the judgment against the terre-tenant's land.

In that case, the plaintiff bank held a judgment against Miller entered May 19, 1927. On November 15, 1927, Miller conveyed a piece of land bound by this judgment to Greene County Amusement Company. The deed was recorded November 18, 1927. On May 12, 1932, a scire facias was issued to revive the judgment, but the terre-tenant was not brought in or served. Judgment was taken on June 21, 1932 against the original defendant. On that day the assignee of the judgment issued a scire facias to revive the *judgment obtained on the first scire facias,* naming the Amuse-

ment Company as terre-tenant. Judgment on this scire facias was entered January 6, 1933. In the meantime three judgments were entered against the Amusement Company on June 21, 1932 by other creditors. The real estate was sold by the sheriff and the fund realized was ordered distributed to the three judgment creditors who obtained their judgments on June 21, 1932 in preference to the judgment of the bank's assignee. The Supreme Court, after pointing out that the lien of the original judgment against the land in the ownership of the *terre-tenant,* was not affected by the scire facias issued against the *judgment debtor* on May 12, 1932, continued as follows: "We construed in [*Farmers National Bank & Trust Co. v. Barrett*] 321 Pa. 273, the Acts of April 16, 1849, P. L. 663, section [8], and of June 1, 1887, P. L. 289, and *settled* the time within which the judgment creditor's lien continues after an alienation of the liened land by the judgment debtor. It was held that these acts continue the lien for five years from the time of the recording of the terre-tenant's deed or his taking of possession. During that time the *in rem* effect of the original judgment as against the terre-tenant continues and within that time the judgment creditor may move by scire facias, in which the terre-tenant is joined, to continue the lien and priority of the judgment for a further period of five years. Tested by this rule, appellant had five years from *November 18, 1927,* to continue his lien. He did not do so.

"When the first scire facias was issued on May 12, 1932, without joining the terre-tenant . . . . . . the writ was ineffective to continue the lien of appellant's judgment against the terre-tenant's land . . . . . .

"But the lien of the original judgment was not lost by that proceeding. It continued until November 18, 1932 [five years from the date of *recording* the deed]. In *Fursht v. Overdeer,* 3 W. & S. 470, it was held that the fact that the judgment creditor issued a scire facias

to revive a judgment without joining a terre-tenant did not result in merging and thereby extinguishing the lien existing by virtue of the original judgment. Within the time limit set by statute that lien continues unimpaired and in full force no matter how many writs of scire facias may be issued thereon without joining the terre-tenant: See also *Farmers National Bank & Trust Company* [*v. Barrett*], supra.

"In this situation, with the original judgment still a lien upon the land, the judgment entered on June 21, 1932, being of no effect, appellant's course was clear. It was to revive the only judgment which was a lien upon the land—the original judgment. *Little v. Smyser*, 10 Pa. 381, clearly so rules. In *Zerns v. Watson*, 11 Pa. 260, the situation was much the same as the one before us, except that it was the terre-tenant who urged the lien was lost rather than a judgment creditor asserting priority. The court there stated: 'The first scire facias was issued against the original defendants alone, without notice to the terre-tenant, and judgment was confessed thereon without his participation. It was clearly, therefore, no lien or encumbrance on the land in his hands, the same having been aliened before the scire facias was issued ...... What then was the remedy of the plaintiff in the judgment in order to continue the lien of it against the land? Surely not to make the second judgment the foundation of his suit.' Appellant failed to revive the only judgment which was a prior lien against the land within the period of five years [from the date of recording the terre-tenant's deed] and consequently the priority of his lien against the land conveyed was lost." (Italics supplied).

In other words, the latest decisions of the Supreme Court, in construing the Acts of 1849 and 1887, supra, announce as settled rules of property: (1) That the conveyance of land *by a judgment debtor* subject to the judgment, by deed recorded within five years

of the entry of the judgment, of itself, has the effect of continuing the lien of the judgment against the land conveyed to the terre-tenant for a period of five years, to be computed from the date the terre-tenant recorded his deed or actually entered into possession of the land; just as by the Act of June 7, 1917, P. L. 447, sec. 15(g)—re-enacting the Act of May 3, 1909, P. L. 386, as amended by the Act of May 14, 1915, P. L. 475—the death of a judgment debtor whose land was bound by the lien of the judgment on the date of his death, has the effect of continuing the lien for the term of five years from the date of his death against the land in the hands of the heirs and devisees, without issuing a scire facias against, or obtaining an amicable agreement of revival from, his legal representatives; and (2) that if a writ of scire facias has been sued out against the judgment debtor, without bringing in the terre-tenant whose deed has been recorded, the issuance of such writ and the entry of judgment thereon *have no effect whatever* on the lien of the judgment on the land of the terre-tenant, and the judgment creditor still has five years from the recording of the terre-tenant's deed within which to sue out an alias writ of scire facias on the *original judgment,*—not on the judgment on the first scire facias to which the terre-tenant was not a party—and bring in the terre-tenant, naming him as such, and proceed to judgment against him.

While not necessary, it may not be out of place to make a brief analysis of the statutes concerned in these decisions.

The Act of April 4, 1798, 3 Sm. L. 331, provided that no judgment thereafter entered should continue a lien on the real estate of the person against whom it was entered for a longer term than five years, unless the person who obtained such judgment, within the term of five years, sued out of the court where the

judgment was entered a writ of scire facias to revive the same.

The Supreme Court in construing this Act held (*Young v. Taylor & Barron,* 2 Binney 217) that if the lands of the defendant were aliened by him before execution issued on the judgment, the plaintiff was not obliged to take out a scire facias against the terre-tenant before he could have execution against the lands in the terre-tenant's possession; and that an execution within a year and a day continued the lien of the judgment without resorting to a writ of scire facias under the Act of 1798.

To get around this decision, inter alia, the Act of March 26, 1827, 9 Sm. L. 303, was passed as a supplement to the Act of 1798, supra. It provided that all judgments entered in any court of record, or revived in the manner prescribed, should continue a lien on the *real estate of the defendant* for the term of five years from the day of entry or revival thereof; and that no judgment should continue a lien on such real estate for a longer period than five years, unless revived within that period by agreement of the parties and *terre-tenants,* filed in writing and entered on the proper docket, or a writ of scire facias to revive the same was sued out within said period, notwithstanding an execution might be issued within a year and a day from the rendering of such judgment.

It was held by the Supreme Court in *Armstrong's Appeal,* 5 W. & S. 352 (1843), as a consequence of this Act, that the revival of a judgment by agreement to which a terre-tenant was not a party, would not continue the lien as to him, even though the deed by which he became terre-tenant was not recorded.

The injurious and unjust consequences to judgment creditors resulting from the Act of 1827, so construed (*Wetmore v. Wetmore,* 155 Pa. 507, 512, 26 A. 694— DEAN, J.) led to the passage of section 8 of the Act of April 16, 1849, P. L. 663, p. 664, which provided: "That

in all cases when a judgment has been or shall be regularly revived between the original parties, the period of five years during which the lien of the judgment continues, shall only commence to run in favor of the terre-tenant, from the time that he or she has placed their deed on record: Provided, That this act shall not apply ...... when the terre-tenant is in actual possession of the land bound by such judgment, by himself or tenant."

By the Act of June 1, 1887, P. L. 289, the supplemental Act of March 26, 1827, was amended by adding to it the following provision: "and no proceeding shall be available to continue the lien of said judgment against a terre-tenant, whose deed for the land bound by said judgment has been recorded, except by agreement, in writing, signed by said terre-tenant, and entered on the proper lien docket, or the terre-tenant, or terre-tenants be named as such in the original scire facias."

There was considerable uncertainty among judges and lawyers as to the effect of the Act of 1887 on the Act of 1849. This court held in *Uhler v. Moses,* 10 Pa. Superior Ct. 194, that, because of the repugnancy between them, the Act of 1887 worked an implied repeal of the Act of 1849. But the Supreme Court, on appeal from that decision, 200 Pa. 498, 50 A. 231, reversed this court and held that the repugnancy was apparent rather than real, and, in any event, it was not sufficient to work a repeal of the earlier Act.

In that case Uhler recovered a judgment in Dauphin County against William S. Moses and William Cunningham on October 6, 1882, which became a lien on a lot of ground in Harrisburg owned by Cunningham. On June 26, 1895 Cunningham conveyed the lot to his wife, by deed recorded November 13, 1895. On October 6, 1897 a scire facias was issued to revive the judgment against the original defendants, without notice to Mrs.

Cunningham, which was duly served and judgment entered against them.

On December 7, 1897 an alias scire facias was issued on the judgment and in this writ Mrs. Cunningham was named as terre-tenant. She filed an affidavit of defense averring that the judgment had ceased to be a lien upon the property conveyed to her before this alias issued and therefore judgment should not be entered against her land; and the court below refused to enter judgment against her, as terre-tenant, for want of a sufficient affidavit of defense. On April 13, 1898 the plaintiff issued a writ of fieri facias on the original judgment, with notice to Alda P. Cunningham, terre-tenant, and levy was made on the land conveyed to her. Mrs. Cunningham then presented her petition asking that said writ of execution be stayed as far as her lot of ground was affected, and after answer filed and argument this was done by the lower court and affirmed by the Superior Court, on the ground that the Act of 1887 had repealed the Act of 1849. In the opinion of the Supreme Court, filed by Mr. Justice DEAN, it was expressly ruled that the Act of 1849 was not repealed; that it remained in full force and effect and that its effect on a judgment which was a valid lien against land aliened by the judgment debtor, was to continue the lien of the judgment for five years from the date the terre-tenant's deed was recorded. The facts were practically identical with those in *Farmers Bank & Trust Co. v. Barrett,* supra, and warranted the following statement by Chief Justice KEPHART in that case, p. 275: "In *Uhler v. Moses,* 200 Pa. 498, Justice DEAN concluded that these two acts were not inconsistent and, on facts identical with those here present, decided that the judgment creditor had five years from the time of the recording of the terre-tenant's deed to revive against him, *notwithstanding the fact that the terre-tenant's deed was on record at the time the judg-*

*ment was revived between the original parties."* (Italics supplied).

This was in substantial accord with the prior statement of the court in *Lyon to use v. Cleveland,* 170 Pa. 611, 619, 33 A. 143, cited by Mr. Justice DEAN in his opinion, where Mr. Justice WILLIAMS, speaking for the Court, said: "But if the purchaser records his deed or enters into the actual possession of the land he becomes a holder of the land bound by the judgment, a terre tenant, of whose position and interest the judgment creditor is bound to take notice at his peril. If thereafter the plaintiff in a judgment against the vendor disregards the position of the terre tenant and revives his judgment without legal notice to him, he will lose his lien, as to the lands so acquired by the terre tenant, *at the end of five years from the time when the notice of the terre tenant's title can be brought home to him."* (Italics supplied). The expression, "at the end of five years from the time when the notice of the terre tenant's title can be brought home to him", means, at the end of five years from the time when the terre-tenant's deed was left for record, or the terre-tenant entered into actual possession of the land; and within that period of five years the plaintiff may continue the lien of the judgment by the issuance of a scire facias to revive, naming the terre-tenant as such.

In *Kefover v. Hustead et al.,* 294 Pa. 474, 144 A. 430, no scire facias was issued against the original judgment debtor, nor was any amicable agreement of revival signed by him, prior to the issuance of the scire facias bringing in the terre-tenants which was more than five years after the entry of the judgment, but less than five years after the recording of the terre-tenants' deeds. The facts were: The plaintiffs on September 15, 1915 secured a judgment in Fayette County against James M. Hustead and filed an exemplification of it in Greene County, where Hustead owned land, six days later

(September 21, 1915). On November 15, 1917 and February 8, 1918 Hustead conveyed some or all of this land to the terre-tenants by deeds recorded November 23, 1917 and March 2, 1918, respectively; and he died March 6, 1918. The judgment was a lien on the lands when these deeds were delivered and recorded. On December 26, 1920, a few months more than five years after the date of entry of the judgment and nearly two years and ten months after Hustead's death, but within five years of the recording of the deeds to the terre-tenants, a scire facias to revive was issued against the executors of Hustead and the grantees of the land. On the trial of the scire facias binding instructions were given for the plaintiffs, and the Supreme Court affirmed the judgment entered on the directed verdict. It is clear that as to any land of the judgment debtor which had not been conveyed away, his death within five years of the entry of the judgment continued the lien of the judgment for five years from his death, under the provisions of the Act of June 7, 1917, P. L. 447, above-referred to. But it is no less equally clear that the death of Hustead, the judgment debtor, could have no effect whatever on the lien of the judgment as to lands conveyed away by him, the deeds to which had been recorded before his death. But the appellants— the terre-tenants—contended that the effect of the Act of 1917 was also to repeal the Act of 1849. Mr. Justice SADLER, speaking for the Court, refused to give it this effect, saying, inter alia (pp. 481-2): "That this legislation is still in force has been recognized in as late a case as *Schotts & Co. v. Agnew*, 81 Pa. Superior Ct. 458. It is made applicable where the judgment has been regularly revived 'by sci. fa. or otherwise,' a phrase used in the various acts dealing with the debts of decedents, and in the present case the judgment was renewed as to Hustead's Estate for the period of five years when he died in 1918. It was within the right of the plaintiff, therefore, to proceed within five years

from the date of the recording of the deeds to charge the land conveyed in his lifetime, and action was taken within that time, though more than five years from the original entry had gone by ...... As to the estate of Hustead the lien of the judgment was renewed in 1918 by his death for the period of five years, and the same would have been true against a grantee as to property conveyed by unrecorded deed where the purchaser was not in actual possession (*Lyon v. Cleveland,* 170 Pa. 611), but, as to those whose deeds were entered, the scire facias was necessarily issued within five years of the date of their recording, the grantor having died thereafter. It is from that time the limitation of the right to revive is to be measured, and the proper steps were taken in this case within the term fixed. Binding instructions for plaintiff were therefore properly given."

These are the statutes and decisions mainly relied upon by the Supreme Court in announcing its settled rules of property as stated in 321 Pa. 273, 184 A. 128, and 322 Pa. 473, 186 A. 87, and set forth by us above. Along the same lines, see our decisions in *Everett Hardwood Lumber Co. v. Calhoun,* 121 Pa. Superior Ct. 451, 183 A. 659, and *First Natl. Bank v. Tomichek,* 140 Pa. Superior Ct. 101, 13 A. 2d 126. In *Miller Bros. v. Boyotz et al.,* 96 Pa. Superior Ct. 208,[1] the judgment had lost its lien on the land when the conveyance was made to the grantee. Hence the lien never attached to the land in his hands, and a revival against the original debtors thereafter had no effect on the land which had been conveyed when the judgment had lost its lien.

If it be asked, what significance is to be given then to the opening phrase in section 8 of the Act of 1849 reading, "That in all cases when a judgment has been or shall be regularly revived between the original parties,"

---

[1] This case was decided before the passage of the Act of June 12, 1931, P. L. 506. See 322 Pa. 473, 477.

the answer is not difficult. It applies to cases where the terre-tenant did not record his deed or enter into actual possession of the land within five years of the entry of the judgment. In such event, in order to preserve the lien as to possible *terre-tenants*—as respects the *original judgment debtor,* himself, see *McCahan v. Elliott,* 103 Pa. 634—the judgment creditor must revive the judgment against the original judgment debtor within five years of the date of the judgment, and such revival continues to bind the land conveyed to terre-tenants whose deeds have not been recorded, etc., and the period of five years during which the lien is so continued, commences to run in favor of the terre-tenant only from the time he records his deed or takes actual possession of the land. As respects terre-tenants, whose deeds have been recorded within five years of the entry or revival of the judgment, the issuance of a scire facias against the judgment debtor has no effect at all on the land of the terre-tenant unless he is brought into it as terre-tenant.

Judge LADNER in the second edition (1941) of his valuable work on 'Conveyancing in Pennsylvania', chapter XII, on 'Searches', after a very comprehensive discussion of the whole subject (pp. 443-448), interprets the decisions of the Supreme Court which we have cited above—with special reference to *Farmers National Bank & Trust Co. to use, &c. v. Barrett,* 321 Pa. 273, 184 A. 128 and *First National Bank & Trust Co. v. Miller,* 322 Pa. 473, 186 A. 87—in accordance with the views expressed in this opinion, and arrives, inter alia, at the following rules for the guidance of conveyancers:

"II.—Where the judgment has been entered, or duly revived by sci. fa., *within five years prior to the recording of the deed from the judgment debtor,* the lien of the judgment is kept alive as against the grantee, as against the terre-tenant and any subsequent grantee of his, for a further period of five years from the date of

such recording, without any sci. fa. being issued during the five years from the entry of the judgment, or from the issuance of the previous sci. fa. (Italics supplied).

"III.—In such case, the issuance, after the recording of the deed, of a sci. fa. against the judgment debtor alone, with or without judgment thereon, is wholly ineffective in reviving the lien of the original judgment, or in creating a new lien, against the terre-tenant.

"IV.—The lien of the original judgment being still in existence for five years from the recording of the said deed, the land can be sold on execution under that lien, at any time during the five year period, without the issuance of any sci. fa. at all; either against the judgment debtor or the terre-tenant.

"V.—Under such circumstances, in order to continue the lien of the judgment beyond the five years following the recording of the deed, a sci. fa. on the *original judgment* (being the judgment which was still a lien when the judgment debtor made his deed) must issue within that period, bringing in the terre-tenant."

The facts in the present case bring it within Judge LADNER'S rules, as above, for the *judgment was entered less than five years* before the deed under which the appellee claims was recorded, on May 16, 1935, and hence the judgment was kept alive as against her for a further period of five years from the date of such recording without the issuance of any sci. fa.; and the subsequent issuance, within five years of the recording of her deed, of a sci. fa. on the *original judgment,* bringing in the appellee as terre-tenant constituted a revival of the judgment as respects the land so conveyed to the terre-tenant and warranted a writ of execution against it to satisfy the judgment.

The assignments of error are sustained. The judgment is reversed and the record is remitted to the court below with directions to enter a judgment in favor of the plaintiff and against the terre-tenant for the amount of the judgment with interest.

DISSENTING OPINION BY KENWORTHEY, J.:

The facts and the history of the pertinent legislation and decisions are amply set forth in the opinion of the President Judge. But I am unable to agree with the construction of the Act of 1849 adopted by the majority. I think that construction disregards the phrase, "when a judgment has been or shall be regularly revived between the original parties," and that the decisions relied upon do not compel the conclusion reached.

Under the Act of 1827, a revival of the judgment against the original debtor alone within the five-year period availed nothing as against the terre-tenant even though the deed to the terre-tenant was unrecorded. *Armstrong's Appeal,* 5 W. & S. 352 (1843). This furnished an opportunity to a conniving debtor to defeat the lien of the judgment irrespective of how diligent the creditor might be.

The intention of the Act of 1849 was to put an end to "that juggling with the title by the judgment debtor and terre-tenant which had grown up under the act of 1827." *Uhler v. Moses,* 200 Pa. 498, 502-503, 50 A. 231. In the interest of open, fair dealing, the Act was intended to afford protection to creditor, debtor and purchaser without imposing hardships on any one of them. *Wetmore v. Wetmore,* 155 Pa. 507, 26 A. 694. That act provides: "In all cases when a judgment has been or shall be *regularly revived between the original parties,* the period of five years, during which the lien of the judgment continues, shall only commence to run in favor of the terre-tenant from the time that he or she has placed their deed on record ......" (italics supplied) or the date when the terre-tenant went into possession.

The majority of the court construes this Act to mean that the lien of the judgment is automatically revived for a further period of five years by recording the deed of the debtor to the terre-tenant. This construction obviously goes much further than giving to the diligent

creditor relief from the hardship which ensued from the Act of 1827. It gives the Act the effect of creating a new and additional method of reviving a judgment between the original parties. I think "regularly revived" means regularly revived in accordance with then existing law.

In *Farmers National Bank & Trust Co. of Reading, to use, v. Barrett et al.*, 321 Pa. 273, 184 A. 128, the judgment was entered April 18, 1928, and was revived by sci. fa. against the original debtor on April 6, 1933. In *Uhler v. Moses*, supra, the judgment was entered October 6, 1892, and a writ of sci. fa. to revive was issued[1] against the original debtor on October 6, 1897. In *First National Bank & Trust Company v. Miller*, 322 Pa. 473, 186 A. 87, the judgment was entered May 19, 1927, and a writ of sci. fa. to revive was issued against the original debtor on May 12, 1932. In *Everett Hardwood Lumber Company v. Calhoun*, 121 Pa. Superior Ct. 451, 183 A. 659, the judgment was entered April 18, 1927 and revived by amicable agreement against the original debtor, April 18, 1932. In *First National Bank of Ashley v. Tomichek et al.*, 140 Pa. Superior Court 101, 13 A. (2d) 126, the judgment was entered on December 8, 1928, and revived by sci. fa. against the original debtors on November 28, 1933.

Thus in all of the cases mentioned in the above paragraph the judgment was regularly revived between the original parties by sci. fa. or by amicable agreement within the five-year period. The language used in these cases and quoted in the majority opinion, therefore, when viewed in the light of the factual situation involved, does not support the majority's interpretation.

---

[1] A writ of sci. fa. to revive a judgment *issued* within the five-year period preserves the lien of the judgment, even though judgment on the writ is not entered until after the five-year period. Act of March 26, 1827, P. L. 129, Sec. 1, amended by Act of June 1, 1887, P. L. 289, Sec. 1, 12 PS 868.

409

*Kefover et al. v. Hustead et al.*, 294 Pa. 474, 144 A.
430, requires special attention. In that case, the judg-
ment was entered September 15, 1915, and the sci. fa.
to revive against the executors of Hustead and the
grantees of the land was not issued until December 26,
1920, a little over three months more than five years
after the judgment, but within five years of the record-
ing of terre-tenant's deeds. But in my view, the decision
of the Supreme Court was placed squarely upon the
ground that, although not revived by sci. fa. or by
amicable agreement within the five-year period, the
judgment was revived against the original debtor (Hus-
tead's executors) *by his death within the period.* Al-
though President Judge KELLER very convincingly
argues that the Fiduciaries Act of 1917 has no applica-
tion to a case in which a deed by a decedent had been
recorded in his lifetime, it seems to me, from reading
Mr. Justice SADLER'S opinion, the Supreme Court took
a different view; that its decision was based squarely on
the ground that Hustead's death had "regularly re-
vived" the judgment against his estate; and that if it
had not been for his death, the decision would have gone
the other way. The opinion separately discusses the
revival against the property owned by Hustead at the
time of his death and the revival against the property
which he had conveyed in his lifetime. As to the former,
the court said, page 479: "As to his estate it is clear
the lien of the judgment extended for five years from the
time last named (the date of death), without revival
against any property which he owned at the time of his
death." There follows a rather lengthy discussion of
the statutes applicable to the land which he had con-
veyed and, although the reasoning is not entirely clear,
the discussion ends on page 480 with the statement:
"*As to the estate,* the judgment against Hustead clearly
remained a lien for five years from his decease ......"
(Italics supplied). Because of its position in the text,
this statement must refer to the land conveyed. The

opinion ends with (page 482): "As to the estate of Hustead, the lien of the judgment was renewed in 1918 by his death for the period of five years, and the same would have been true against a grantee as to property conveyed by unrecorded deed where the purchaser was not in actual possession (*Lyon v. Cleveland*, 170 Pa. 611), but, as to those whose deeds were entered, the scire facias was necessarily issued within five years of the date of their recording, the grantor *having died thereafter.*" (Italics supplied).

It is significant to contrast the language of the Act of 1849 that "when a judgment has been or shall be regularly revived between the original parties," with the language of the Fiduciaries Act of 1917, which provides an automatic revival by death, that "although such judgments be not revived by scire facias or otherwise after his [the debtor's] death." I think this difference was deliberate and intended. The revival of a judgment against a dead debtor presents a number of difficulties for the creditor which do not exist in the revival of a judgment against one who is alive. Considerable periods of time frequently elapse between the death of the debtor and the grant of letters to his personal representative. Frequently, no letters are issued until and unless a creditor makes the move, and problems are often encountered in ascertaining who the terre-tenant or tenants are.

I would affirm the judgment.

RHODES, J., joins in this dissent.